1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JANE DOE, *also known as T.R.S.*,           No.  2:23-cv-01676-DAD-CSK

12                  Plaintiff,

13          v.                                     ORDER GRANTING IN PART AND
                                                   DENYING IN PART DEFENDANTS'
14   WYNDHAM HOTELS AND RESORTS,                   MOTIONS TO DISMISS
     et al.,
15                                                 (Doc. Nos. 45, 46, 47)
                  Defendants.
16

17

18          This matter is before the court on three motions to dismiss, one filed by defendant

19   Marriott International Inc. d/b/a Courtyard by Marriott San Jose Campbell ("defendant Marriott")

20   (Doc. No. 45), one filed by defendants Wyndham Hotels & Resorts, Inc. ("WHR"), Days Inn

21   Worldwide, Inc. ("DIW"), and Wyndham Hotel Group, LLC ("WHG") (collectively, "the

22   Wyndham brand defendants") (Doc. No. 46), and one filed by Vitarag Hospitality, Inc.

23   ("defendant Vitarag") (Doc. No. 47).  All three motions were filed on February 29, 2024, and on

24   March 29, 2024, they were taken under submission on the papers pursuant to Local Rule 230(g).

25   (Doc. No. 57.)  For the reasons explained below, the court will grant in full defendant Vitarag's

26   and the Wyndham brand defendants' motions to dismiss, and will grant in part and deny in part

27   defendant Marriott's motion.  Leave to amend will also be granted.

28   /////

                                                    1

**BACKGROUND**

On August 11, 2023, plaintiff Jane Doe, also known as T.R.S., initiated this action asserting that she suffered harms and losses due to the sex trafficking she allegedly endured at the Days Inn Sacramento Downtown hotel (the "Sacramento Days Inn") and the Courtyard by Marriott San Jose Campbell hotel (the "Campbell Marriott") (collectively, the "Subject Hotels"). (Doc. No. 1.)  On December 29, 2023, defendants Marriott and WHR filed motions to dismiss plaintiff's complaint.  (Doc. Nos. 28, 32.)  On January 11, 2024, plaintiff filed her operative first amended complaint ("FAC") which rendered moot the motions to dismiss that had been filed in December 2023.  (Doc. Nos. 36, 37.)

In her FAC, plaintiff asserts a single cause of action under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1581, *et seq*., against each of the following defendants:  defendant Marriott, the Wyndham brand defendants, defendant Vitarag, defendant SKAVP Enterprises, LP ("defendant SKAVP"), and defendant Campbell HHG Hotel Development, LP ("defendant Campbell HHG") (collectively, "the defendants").[1]

In her FAC, plaintiff alleges as follows.  Plaintiff is a resident of Kansas City, Missouri and a victim of sex trafficking.  (Doc. No. 36 at ¶¶ 9–10.)  On or about August 10 and August 11, 2013, plaintiff was unlawfully trafficked at the Sacramento Days Inn.  (*Id*. at ¶ 37.)  The Wyndham brand defendants, defendant Vitarag, and defendant SKAVP owned, operated, and controlled the Sacramento Days Inn.  (*Id*. at ¶¶ 18, 19, 21.)  Plaintiff's traffickers had in the past routinely used the Sacramento Days Inn for purposes of sex trafficking.  (*Id.* at ¶ 42.)  There were obvious signs of plaintiff being trafficked at the Sacramento Days Inn, including the fact that hotel rooms would be paid for in cash or prepaid card, she would be in the hotel with a group of girls and an older female/male, she had few or no personal items, the car used to transport her to that location would be parked in a spot where the license plate was not visible, she would not leave her room, the "Do Not Disturb" sign was constantly on the door to the room being used,

---

[1]  In her FAC, plaintiff characterizes the Wyndham brand defendants and defendant Marriott as the "Franchisor defendants."  (Doc. No. 36 at ¶ 30.)  She also characterizes defendant Vitarag, defendant SKAVP, and defendant Campbell HHG as the "Franchisee defendants."  (*Id*. at ¶¶ 23, 28, 31.)  The court will adopt these naming conventions in this order.

1  and there was a constant heavy foot traffic in and out of her room involving men who were not

2  hotel guests.  (*Id.* at ¶ 45.)  These individuals entered and left at unusual hours and were present at

3  the hotel for brief periods of time.  (*Id.*)  Further, hotel staff at the Sacramento Days Inn interacted

4  directly with plaintiff's trafficker.[2]  (*Id.* at ¶ 46.)  Hotel staff came to plaintiff's room, looked in

5  the room, and saw evidence of prostitution and drug use, including condoms, lubricant, and

6  illegal drugs.  (*Id.*)

7       On or about September 4–7, 2013, plaintiff was unlawfully trafficked at the Campbell

8  Marriott.  (*Id.* at ¶ 48.)  Defendants Marriott and Campbell HHG owned, operated, and controlled

9  the Campbell Marriott.  (*Id.* at ¶¶ 25, 27.)  The same obvious signs of plaintiff being trafficked

10  were present at the Campbell Marriott as well.  (*Id.* at ¶ 55.)

11       At both hotels, plaintiff did not have access to her identification card, which was

12  controlled by her trafficker.  (*Id.* at ¶ 106.)  Her trafficker would present plaintiff's identification

13  card when reserving a room in her name.  (*Id.*)  Her trafficker was also familiar to the staff at both

14  hotels.  (*Id.* at ¶¶ 158, 168.)  Plaintiff and her trafficker would stay for an extended period of time

15  but pay for a room on a day-to-day basis.[3]  (*Id.* at ¶ 106)  Plaintiff had limited access to clothing

16  and would be forced to wear inappropriate clothing.  (*Id.* at ¶ 107.)  She appeared malnourished

17  and sleep-deprived, had visible bruises, showed obvious signs of fear and anxiety, also showed

18  obvious signs of disorientation and impairment due to her drugged state, and was frequently

19  yelled at by her trafficker in a way that could be heard by hotel staff.  (*Id.*)  Her trafficker was

20  violent with her in public areas of the hotel, and hotel staff saw specific incidents of physical

21  abuse and heard sounds indicating her abuse coming from her room.  (*Id.* at ¶¶ 107, 109.)

22  Plaintiff would decline room service for several consecutive days and would be confined to her

23  _____

24  [2]  The court notes that the allegations of plaintiff's FAC are inconsistent as to whether she had
    one trafficker or multiple traffickers.  (*See, e.g.*, Doc. No. 36 at ¶¶ 42, 46.)  As will be explained

25  in more detail below, such inconsistencies and other instances of lack of specificity in plaintiff's
    factual allegations connecting what the defendants knew or should have known as to her own

26  trafficking plague the FAC.

27  [3]  The court also observes that plaintiff's allegation that she "would stay for an extended period"
    appears to be inconsistent with her allegation that she was at the Sacramento Days Inn only from

28  August 10, 2013 to August 11, 2013.  (Doc. No. 36 at ¶¶ 37, 106(c).)

room for excessively long periods.  (*Id*. at ¶ 109.)[4]  Her traffickers would order or require her to order excessive additional towels and sheets, and hotel staff would enter her room to find the room littered with condoms, sex paraphernalia, and signs of illegal drug use left behind.  (*Id*.)  Hotel staff entered plaintiff's room to find her but did not take any steps to inquire about her wellbeing or to assist her.  (*Id*.)  The Franchisee defendants of both hotels also failed to appropriately report suspected trafficking activity to law enforcement authorities.  (*Id*. at ¶ 122.)

The Franchisor defendants monitored the criminal activity occurring in their branded hotels.  (*Id*. at ¶ 75.)  They also directly received payments and real-time guest information.  (*Id*. at ¶¶ 129, 141.)  Multiple news stories reported sex trafficking at various Days Inn and Marriott properties, and online reviews discussed prostitution and criminal activity at the Subject Hotel locations.  (*Id*. at ¶¶ 79, 81, 86, 88, 101.)  Traffickers chose to operate at hotels run by the Franchisor defendants because their policies, practices, and single-minded focus on profit-maximization were known to create a favorable environment for sex trafficking.  (*Id*. at ¶¶ 135, 139, 147, 151.)

Based on these and other allegations in her FAC, plaintiff asserts her single cause of action for sex trafficking under the TVPRA against all of the named defendants.  (*Id.* at 86.)  With respect to that cause of action, plaintiff pursues a beneficiary liability theory against all defendants, a perpetrator liability theory against the Franchisee defendants, and a vicarious liability theory against the Franchisor defendants for violations by the Franchisee defendants as both beneficiaries and perpetrators.  (*Id*. at 87–91.)

On February 29, 2024, defendant Marriott, defendant Vitarag, and the Wyndham brand defendants (collectively, "the moving defendants") each filed motions to dismiss plaintiff's FAC in its entirety pursuant to Rule 12(b)(6).  (Doc. Nos. 45, 46, 47.)  On March 14, 2024, plaintiff filed oppositions to those motions.  (Doc. Nos. 51, 52, 53.)  The moving defendants each filed replies thereto on March 25, 2024.  (Doc. Nos. 54, 55, 56.)

---

[4]  The court notes that plaintiff's allegation that her traffickers would "decline room service for several consecutive days" at the Subject Hotels is also inconsistent with her allegation that she was at the Sacramento Days Inn only from August 10, 2013 to August 11, 2013.  (Doc. No. 36 at ¶¶ 37, 109(a).)

1

**LEGAL STANDARD**

2      The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

3 sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

4 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of

5 sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901

6 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to

7 relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A

8 claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

9 the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

10 *Iqbal*, 556 U.S. 662, 678 (2009).

11      In determining whether a complaint states a claim on which relief may be granted, the

12 court accepts as true the allegations in the complaint and construes the allegations in the light

13 most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However,

14 the court need not assume the truth of legal conclusions cast in the form of factual allegations.

15 *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not

16 require detailed factual allegations, "it demands more than an unadorned, the-defendant-

17 unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers

18 mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

19 *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements

20 of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is

21 inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the

22 defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen.*

23 *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

24

**ANALYSIS**

25      The TVPRA makes forced labor and sex trafficking criminal offenses. 18 U.S.C. § 1591;

26 *see also J.C. v. Choice Hotels Int'l, Inc*., No. 20-cv-00155-WHO, 2020 WL 6318707, at *3 (N.D.

27 Cal. Oct. 28, 2020). "In addition to the criminal prohibition," the TVPRA also "creates civil

28 liability for two categories of defendants: (1) those who have themselves committed a criminal

offense under § 1591 of the TVPRA (i.e., perpetrator liability), and (2) those who are not themselves subject to criminal liability but who knowingly benefitted from participation in a venture that they knew or should have known was committing an offense under § 1591 of the TVPRA (i.e., beneficiary liability)." *B.J. v. G6 Hosp., LLC*, No. 22-cv-03765-MMC, 2023 WL 6120682, at *3 (N.D. Cal. Sept. 18, 2023) (internal citations and quotations omitted).  As noted, in her FAC, plaintiff asserts both beneficiary and perpetrator theories of liability.  The court will address both theories of liability below.

## A.      Plaintiff's Beneficiary Liability Claims

"To state a claim under a section 1595(a) beneficiary theory, [the plaintiff] must allege facts from which it can reasonably [be] inferred that [the defendants] (1) knowingly benefitted financially or by receiving anything of value; (2) from participation in a venture; (3) they knew or should have known has engaged in sex trafficking."  *J.C.*, 2020 WL 6318707, at *4 (internal citations and quotations omitted).  "A plaintiff may satisfy these elements in one of two ways. Specifically, such plaintiff may show that the defendant's own acts, omissions, and state of mind establish each element, i.e., that such defendant is directly liable under the statute, or such plaintiff may impute to the defendant the acts, omissions, and state of mind of an agent of the defendant, i.e., that the defendant is indirectly, or vicariously, liable under the statute."  *B.J.*, 2023 WL 6120682, at *3 (internal citations and quotations omitted).

While some district courts have analyze these components as three distinct elements (*see J.C.*, 2020 WL 6318707,  at *4), others have addressed the second and third elements as if they are a combined, single element.  *See, e.g., A.B. v. Wyndham Hotels & Resorts, Inc*., 532 F. Supp. 3d 1018, 1024–28 (D. Or. 2021) (analyzing whether the defendant "knowingly benefitted" as the first element and whether it "participated in a venture which it knew or should have known engaged in sex trafficking" as the second element); *A.B. v. Hilton Worldwide Holdings Inc*., 484 F. Supp. 3d 921, 935–39 (D. Or. 2020) (same); *see also B.J*., 2023 WL 6120682, at *4 (internal quotation and citation omitted) ("The third prong of a direct beneficiary liability claim overlaps substantially with the second . . . .").  Here, the allegations set forth in plaintiff's FAC present significant overlap between the second and third elements, particularly since her description of

the ventures that the defendants allegedly participated in involve their knowledge of her trafficking.  Plaintiff first alleges that each defendant took part in a venture that resulted when they developed and maintained a continuous business relationship and implicit understanding with sex traffickers at the Subject Hotels, including Jane Doe T.R.S.'s trafficker, by renting them rooms and providing them related services despite the fact that each defendant knew or should have known these traffickers were using the Subject Hotels to engage in sex trafficking violations, including the trafficking of plaintiff ("Venture 1").  (Doc. No. 36 at ¶¶ 116, 201(a).) Plaintiff also alleges that the Franchisor defendants participated in a venture regarding the operation of the Subject Hotels through a continuing business relationship with the Franchisee defendants despite knowledge that the hotel was facilitating sex trafficking, supporting aspects of hotel operations that they knew or should have known were facilitating trafficking, and continuing to provide marketing services for the hotel after they knew or should have known that the venture was violating the TVPRA ("Venture 2").  (*Id*. at ¶ 202(e).)

The undersigned adopts the latter approach and will analyze the defendants' participation in a venture and knowledge that the venture was engaged in sex trafficking as one combined element, given plaintiff's allegations in this case that the ventures themselves involved defendant knowledge.  The court will first address plaintiff's direct beneficiary liability claim as it pertains to defendant Vitarag (the only Franchisee defendant among the moving defendants) and the Franchisor defendants, and then will turn to plaintiff's vicarious beneficiary liability claim.

      1.    Direct Beneficiary Liability Claims

          a.    *Defendant Vitarag's Participation in a Venture Which it Knew or Should Have Known Engaged in Sex Trafficking*

In its pending motion, defendant Vitarag argues that plaintiff has failed to sufficiently plead that it "knowingly participated in a venture in violation of the TVPRA" and "knew or should have known the venture was engaged in trafficking."  (Doc. No. 47 at 11–14.)

"The phrase 'participation in a venture' requires that the [plaintiff] allege that [the defendants] took part in a common undertaking or enterprise involving risk and potential profit." *B.J. v. G6 Hosp.,* LLC, No. 22-cv-03765-MMC, 2023 WL 3569979, at *4 (N.D. Cal. May 19,

2023).  The allegations must "connect the dots between [the p]laintiff's alleged sex trafficking and these [d]efendants."  *B.M. v. Wyndham Hotels & Resorts, Inc.,* No. 20-cv-00656-BLF, 2020 WL 4368214, at *5 (N.D. Cal. July 30, 2020); *see also Doe v. Wyndham Hotels and Resort*, No. 8:23-cv-01554-JVS-JDE, 2024 WL 2104596, at *3 (C.D. Cal. Feb. 28, 2024).  "[T]here are two ways in which a plaintiff can connect the dots between the plaintiff's experience as a victim of sex trafficking and the specific defendant in the lawsuit for purpose of pleading the second prong of a TVPRA claim:  by alleging a direct association between the defendant hotel and the plaintiff's trafficker, or by showing a continuous business relationship between a defendant hotel and a sex trafficker where the defendant rented rooms to people it knew or should have known were engaged in sex trafficking."  *B.J.*, 2023 WL 6120682, at *4 (citation omitted); *see also B.J*, 2023 WL 3569979, at *4 (noting that a plaintiff can allege a defendant's participation in a venture through allegations that show "a continuous business relationship between the trafficker and the defendant such that it would appear that the trafficker and the defendant have established a pattern of conduct or could be said to have a tacit agreement").

In her FAC, plaintiff does not allege a direct association between defendant Vitarag and her trafficker.  Instead, she alleges that defendant Vitarag took part in Venture 1 which involved continuous business relationships with sex traffickers.  Defendant Vitarag argues that plaintiff does not plausibly allege a continuous business relationship or commercial enterprise between itself and plaintiff's trafficker.  (Doc. No. 47 at 12–13.)  Defendant Vitarag contends that at most, plaintiff has alleged that it received a financial benefit from renting a room to a person engaged in sex trafficking, and there were visible signs that plaintiff was being trafficked during her one-night stay in August 2013 at the Sacramento Days Inn.  (*Id.* at 13.)  According to defendant Vitarag, its observations of her alleged trafficking do not amount to its participation in a venture as required in order to state a cognizable direct beneficiary liability claim under 1595(a).  (*Id.*)

The court notes that while plaintiff alleges that she was trafficked at the Sacramento Days Inn during her one-night stay there, she also alleges that her traffickers were familiar to the staff at that hotel, and that her traffickers frequently used this hotel for trafficking knowing that staff members would look the other way.  (Doc. No. 36 at ¶¶ 156, 158.)  She alleges that her traffickers

8

freely made requests of staff that would facilitate trafficking activities, and that hotel staff provided additional services to her traffickers, such as excessive extra towels and housekeeping services. (*Id*. at ¶ 158.)  Moreover, plaintiff alleges that defendant Vitarag allowed traffickers to take steps that would minimize their traceability, such as permitting cash payments for rooms and not requiring that identification be provided from appropriate parties. (*Id.*)  Plaintiff alleges that all of these interactions are evidence of an implicit agreement between her traffickers and defendant Vitarag. (*Id.*)

The court considers these allegations in determining whether plaintiff has sufficiently alleged defendant Vitarag's participation in a venture, but ultimately concludes that she has not done so.  While these factual allegations could support plaintiff's contention that her traffickers had an ongoing business relationship with defendant Vitarag, plaintiff has not sufficiently pled that within this relationship, defendant Vitarag rented rooms to people it knew or should have known were engaged in sex trafficking.  In particular, because plaintiff alleges that she was trafficked at the Sacramento Days Inn only during a one-night stay at the hotel, her allegations of the obvious signs of her own trafficking do not support her assertion of defendant Vitarag's knowledge that it was renting to people engaged in sex trafficking when it rented a room to her for her one night stay.

In order to state a cognizable claim in this regard, plaintiff must allege that defendant Vitarag's prior encounters with her traffickers made it such that it should have known that her own traffickers were engaged in sex trafficking in violation of 18 U.S.C. § 1591.  Plaintiff has not alleged facts of this nature in her FAC.  Her allegations that her traffickers were familiar to defendant Vitarag, that they received extra housekeeping services, that they paid for rooms in cash, and that they did not supply identification for all parties, are an insufficient basis upon which to assert defendant Vitarag's actual or constructive knowledge that it was renting rooms to people participating in sex trafficking, as opposed to other conduct.  *See A.B. v. Shilo Inn, Salem, LLC*, No. 3:23-cv-00388-IM, 2023 WL 5237714, at *5 (D. Or. Aug. 15, 2023) ("Although Plaintiff plausibly alleges indicia of commercial sex activity, when the victim is an adult, Section 1591 only provides a remedy for commercial sex activity involving 'force, threats of force, fraud,

9

[or] coercion.'  Because these allegations alone are not sufficient for this Court to conclude that Defendant ever witnessed signs of commercial sex activity by 'force, threats of force, fraud, [or] coercion,' as opposed to commercial sex activity generally, these facts do not establish Defendant's participation in a venture engaged in sex trafficking under the TVPRA.") (citing 18 U.S.C. § 1591(a)).  Where alleged conduct has "two possible explanations, only one of which can be true and only one of which results in liability . . . [s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true." *Petzschke v. Century Aluminum Co. (In re Century Aluminum Co. Sec. Litig.)*, 729 F.3d 1104, 1108 (9th Cir. 2013); *see also, e.g.*, *J. B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2020 WL 4901196, at *11 (N.D. Cal. Aug. 20, 2020) (noting that "allegations that [the TVPRA] victim sought help and was seen by [hotel] employees with physical injuries or other facts suggesting coercion allow courts to infer that . . . hotel employees should have known that human trafficking was occurring, as opposed to other criminal conduct").  Here, plaintiff has not alleged such "something more" with regard to defendant Vitarag's prior interactions with her traffickers, and thus the court concludes that plaintiff has not plausibly alleged that defendant Vitarag knew or should have known that it was renting hotel rooms to people participating in sex trafficking.  *See B.J.*, 2023 WL 3569979, at *5–6 (finding the plaintiff's direct TVPRA claims against the franchisee defendants were subject to dismissal where the plaintiff did not allege that any hotel employees witnessed certain open and obvious signs of commercial sex trafficking, and the events that plaintiff alleged were witnessed by housekeeping staff were "equally consistent with criminal conduct other than sex trafficking, e.g., prostitution").

Accordingly, the court finds that plaintiff's direct beneficiary claim against defendant Vitarag is subject to dismissal.  However, the court will grant plaintiff an opportunity to clarify her allegations as to defendant Vitarag's participation in a venture that it knew or should have known was engaged in trafficking, because it appears that granting leave to amend would not be futile.  *See B.J.*, 2023 WL 6120682, at *4 (finding that the plaintiff did sufficiently allege that a continuous business relationship existed between the plaintiff's trafficker, the franchisee defendants, and their respective franchisors, based on the franchisee defendants' "necessary

1   participation in the room rentals by interfacing with customers, including [p]laintiff's trafficker"

2   where the plaintiff alleged that her trafficker "intermittently rented rooms . . . for weeks or

3   months at a time" at one hotel and trafficked her nightly or weekly at others); *see also A.D. v.*

4   *Wyndham Hotels & Resorts, Inc.*, No. 4:19-cv-00120, 2020 WL 8674205, at *4 (E.D. Va. July 22,

5   2020) (finding that the plaintiff adequately alleged that the defendant participated in a venture

6   where she alleged that the defendant "rented numerous rooms to her trafficker, for various lengths

7   of time, and that the rentals were often renewed").

8              b.      *The Franchisor Defendants*

9         The court next considers plaintiff's direct beneficiary liability claims brought against the

10   Franchisor defendants, all of whom have moved to dismiss plaintiff's FAC.  (Doc. Nos. 45, 46.)

11   The required elements as to the Franchisor defendants are the same as discussed above:  "a

12   plaintiff must allege facts plausibly establishing the defendant (1) knowingly benefited financially

13   (2) from participation in a venture (3) that [the] [d]efendant knew or should have known engaged

14   in sex trafficking as defined in 18 U.S.C. § 1591."  *B.J.*, 2023 WL 6120682, at *7 (internal

15   quotations and citation omitted).  The Franchisor defendants, consisting of the Wyndham brand

16   defendants and defendant Marriott, argue that plaintiff has failed to adequately allege facts

17   addressing all of these elements in the claims brought against them.  Once again, the court will

18   analyze the participation and knowledge requirements as one combined element due to the nature

19   of the ventures that plaintiff has alleged the Franchisor defendants participated in.

20              i.      The Wyndham Brand Defendants

21              (A)      Knowingly Benefit

22         The Wyndham brand defendants argue that plaintiff has not plausibly alleged that they

23   benefited from her alleged trafficking, which is the first element as to a beneficiary claim brought

24   under the TVPRA.  (Doc. No. 46-1 at 20.)  They argue that, "[a]t most, the [FAC] alleges that the

25   Wyndham defendants received benefits in the form of royalties and 'fees from the operation' of

26   the Days Inn Facility."  (*Id.*)

27         "To satisfy the first element, [the plaintiff] must plausibly allege the [defendants]

28   knowingly benefitted financially or by receiving anything of value from the trafficking venture."

11

1    *J.C.*, 2020 WL 6318707, at *4 (citation omitted).  "[T]he rental of a room . . . constitutes a

2    financial benefit from a relationship with the trafficker sufficient to meet this element."  *B.J.*,

3    2023 WL 3569979, at *4 (citation omitted).  Plaintiff has alleged that "each of the Wyndham

4    brand defendants received a share of the profits from room rentals collected at the Sacramento

5    Days Inn" and that "[t]he fees generated by the Wyndham brand defendants are primarily based

6    on gross room rentals; therefore, the Wyndham brand defendants' profits increase with each room

7    rental at the Sacramento Days Inn."  (Doc. No. 36 at ¶ 153(a).)  She also alleges that each

8    defendant, including the Wyndham brand defendants, "received monetary payment from each

9    room rented at the Subject Hotels, including the rooms where Jane Doe T.R.S. was being

10   trafficked."  (*Id.* at ¶ 153.)  The court finds plaintiff's allegations sufficient to satisfy this first

11   element of her beneficiary claim brought against the Wyndham brand defendants.  *See B.J.*, 2023

12   WL 3569979, at *4 (finding the plaintiff's allegations sufficient where she alleged that defendant

13   Marriott received "a percentage of the gross room revenue for the money generated by the

14   operations of all Marriott hotels, including a percentage of the rate charged for the rooms in

15   which [the plaintiff] was trafficked").

16                               (B)      Participation in a Venture Which it Knew or Should Have

17                                        Known Engaged in Sex Trafficking

18          Plaintiff next alleges that the Franchisor defendants participated in the same two ventures

19   discussed previously with respect to defendant Vitarag, Venture 1 and Venture 2.  (Doc. No. 36 at

20   ¶¶ 201–02.)  Again, a plaintiff can connect the dots between her experience as a victim of sex

21   trafficking and a specific defendant for the purpose of pleading the second prong of a TVPRA

22   claim by alleging facts "showing a continuous business relationship between a defendant hotel

23   and a sex trafficker where the defendant rented rooms to people it knew or should have known

24   were engaged in sex trafficking."  *B.J.*, 2023 WL 6120682, at *4 (citation omitted); *see also H.H.

25   v. G6 Hosp., LLC*, No. 2:19-cv-00755, 2019 WL 6682152, at *4 (S.D. Ohio Dec. 6, 2019) ("In

26   the absence of a direct association, [the p]laintiff must allege at least a showing of a continuous

27   business relationship between the trafficker and the hotels such that it would appear that the

28   trafficker and the hotels have established a pattern of conduct or could be said to have a tacit

                                                    12

1   agreement.").  For example, in *J.C.*, the district court found that the plaintiff had plausibly

2   pleaded the franchisor defendants' "participation in a venture" where she alleged that she

3   exhibited obvious signs of sex trafficking, while kept at hotels over extended periods of time, that

4   were observed by hotel staff who operated under policies that required the reporting of such

5   incidents up the chain to the corporate defendants.  2020 WL 6318707, at *7–8.

6        Here, however, the court notes that plaintiff alleges only that she was trafficked at the

7   Sacramento Days Inn for a one-night stay or a two-day period.  (Doc. No. 36 at ¶ 37.)  She alleges

8   that during that short period of time, she exhibited signs of trafficking that hotel staff had "a duty

9   to report" to the Wyndham brand defendants and "did in fact report to the Wyndham brand

10  defendants with respect to Jane Doe T.R.S."  (*Id.* at ¶ 44.)  However, plaintiff has not alleged that

11  the Wyndham brand defendants continued transacting with her traffickers after receiving this

12  report.  She has also not alleged that her traffickers were previously reported for their trafficking

13  activities to the Wyndham brand defendants, such that those defendants could be said to have had

14  a tacit agreement with plaintiff's traffickers to allow them to keep operating and ultimately traffic

15  plaintiff.  In the absence of any such allegations, the court finds that plaintiff has also failed to

16  allege a continuous business relationship between the Wyndham brand defendants and her

17  trafficker.  *See B.M.*, 2020 WL 4368214, at *5 (finding that the plaintiff had not sufficiently

18  alleged the franchisor defendant's participation in a venture where she alleged that it was

19  "generally aware that acts of sex trafficking take place in their franchisee hotels" but had not

20  alleged facts linking it to the sex trafficking of the plaintiff in the case before the court).

21  However, the court will grant plaintiff leave to amend her FAC to clarify any basis for a

22  continuous business relationship between the Wyndham brand defendants and her traffickers, as

23  well as of the Wyndham brand defendants' alleged knowledge of the trafficking activities

24  involving plaintiff.

25                     ii.      Defendant Marriott

26                          (A)      Knowingly Benefit

27        Defendant Marriott argues in its motion to dismiss that plaintiff has failed to allege the

28  first element of a TVPRA claim against it.  (Doc. No. 45 at 23.)  Once again, "the rental of a

1    room . . . constitutes a financial benefit from a relationship with the trafficker sufficient to meet

2    this element." *B.J.*, 2023 WL 3569979, at *4.

3          Plaintiff alleges that she was trafficked from September 4–7, 2013, which involved paying

4    for hotel rooms at the Campbell Marriott.  (Doc. No. 36 at ¶¶ 48, 55.)  She alleges that each

5    defendant, including defendant Marriott, "received monetary payment from each room rented at

6    the Subject Hotels, including the rooms where Jane Doe T.R.S. was being trafficked." (*Id.* at

7    ¶ 153.)  In particular, she alleges that "Marriott International, Inc. generated substantial income

8    from operations of hotels such as the Campbell Marriott" and "received a share of the profits

9    from room rentals collected at the Campbell Marriott." (*Id.* at ¶ 153(c).)  She also alleges that the

10    fees generated by defendant Marriott are "primarily based on gross room rentals therefore,

11    [defendant Marriott's] profits increase with each room rental at the Campbell Marriott." (*Id.*)

12    Accordingly, the court concludes that plaintiff's allegations in this regard are sufficient to meet

13    the "knowingly benefitted" element of her claim and to defeat a motion to dismiss.  *See J.C.*,

14    2020 WL 6318707, at *4 (finding that the plaintiff plausibly alleged this element as it "merely

15    requires that [the d]efendant knowingly receive a financial benefit").

16                (B)    Participation in a Venture Which it Knew or Should Have

17                        Known Engaged in Sex Trafficking

18          Defendant Marriott also moves to dismiss plaintiff's FAC on the grounds that she has

19    failed to sufficiently allege that it participated in a venture that violated the TVPRA and that it

20    had actual or constructive knowledge that the venture violated the TVPRA.  (Doc. No. 45 at 13–

21    23.)  In her FAC, plaintiff alleges that defendant Marriott also participated in Ventures 1 and 2.

22    (Doc. No. 36 at ¶¶ 165–75.)  According to her allegations, defendant Marriott participated in

23    Venture 1 by "continually renting rooms to traffickers, creating a favorable environment for

24    trafficking, and providing a venture where traffickers could continue their sexual exploitation

25    with minimal risk of detection and disturbance, all the while ignoring the obvious signs of

26    trafficking (including Jane Doe T.R.S.'s trafficking)." (*Id.* at ¶ 201(e).)  In Venture 2, plaintiff

27    alleges that defendant Marriott, as a Franchisor defendant, had an ongoing business relationship

28    with a Franchisee defendant "despite actual or constructive knowledge that the hotel was

facilitating sex trafficking."  (*Id.* at ¶ 202(e).)  Plaintiff alleges that the Franchisor defendants, including defendant Marriott, "directly involve[ed] themselves in supporting aspects of hotel operations that they knew or should have known were facilitating trafficking at the hotel" and "continu[ed] to lend the perceived legitimacy of their brand and provide marketing services for the hotel after they knew or should have known the venture was engaged in violations of the TVPRA."  (*Id.*)

However, the court finds that as to defendant Marriott as well, plaintiff's FAC fails to allege facts connecting the dots as to either venture.  Specifically, plaintiff has simply failed to allege any facts "showing a continuous business relationship . . . where the defendant rented rooms to people it knew or should have known were engaged in sex trafficking."  *B.J.*, 2023 WL 6120682, at *4 (citation omitted).  The court notes that while plaintiff states that Venture 1 reflected a continuous business relationship between defendant Marriott and sex traffickers, she has alleged only that her trafficking at the Campbell Marriott took place over a 3-night or 4-day period, and has not alleged that defendant Marriott learned of her trafficking from hotel employees during that time period and nonetheless continued transacting business with her traffickers.  (Doc. No. 36 at ¶ 48.)  Plaintiff has also not alleged that defendant Marriott received notice about plaintiff's traffickers and their trafficking activities from a previous visit yet continued to transact with them, perhaps through plaintiff's visit.  As to Venture 2, plaintiff's allegations describe the business relationships between Franchisor and Franchisee defendants and are not specific to herself at all.  (*Id.* at ¶ 202.)  Accordingly, the court concludes plaintiff has failed to plausibly plead defendant Marriott's direct participation in a venture under 18 U.S.C. § 1595(a).  *See B.M.*, 2020 WL 4368214, at *5 ("[T]he Complaint is devoid of any facts linking these Defendants (Wyndham and Choice) to the sex trafficking of this Plaintiff (B.M.), and thus fails to make a plausible claim for Wyndham's and Choice's direct 'participation in venture.'")

Having found plaintiff's TVPRA claim against defendant Marriott to be subject to dismissal, the court will grant plaintiff leave to amend this claim in its entirety since it is not clear that amendment would be futile.  *Compare J.C.*, 2020 WL 6318707, at *5–7 (finding that the plaintiff had "plausibly plead[] that [the] defendants directly 'participated in a venture' by

1   providing lodging to people it knew or should have known were engaged in *her* sex trafficking"

2   where she "sufficiently allege[d] that [the Franchisor defendants] knew or should have known

3   that *she* was being trafficked at specific hotel locations given purported policies that hotel staff

4   who observe 'obvious signs,' like the ones J.C. exhibited" (which included long stays, frequent

5   returns to the same location with different guests, prominent bruising, etc.) "report such incidents

6   up the chain to the corporate defendants named in this suit") (emphasis in original).

7           2.      Agency Beneficiary Liability Claims

8           As stated above, plaintiff also pursues a vicarious liability theory against the Franchisor

9   defendants for violations by the Franchisee defendants as beneficiaries.  (Doc. No. 36 at ¶¶ 208–

10  09.)  The Franchisor defendants (the Wyndham brand defendants and defendant Marriott) have

11  moved to dismiss this claim.

12                  a.      *The Wyndham Brand Defendants*

13          The Wyndham brand defendants argue that the TVPRA does not provide for indirect

14  liability, because the statute "contains no such language [implicating agency principles]."  (Doc.

15  No. 46-1 at 24).  The court rejects this argument.  *See J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-

16  cv-00672-KJM-JDP, 2022 WL 10626493, at *5 (E.D. Cal. Oct. 18, 2022) ("As a threshold

17  matter, a plaintiff may hold franchisors vicariously liable under the TVPRA.")  While the

18  Wyndham brand defendants are correct that the TVPRA does not explicitly address the issue of

19  vicarious liability, "statutes are presumed not to disturb the common law, unless the language of

20  the statute is clear and explicit for this purpose."  *State Eng'r of Nev. v. S. Fork Band of Te-Moak*

21  *Tribe of W. Shoshone Indians of Nev.*, 339 F.3d 804, 814 (9th Cir. 2003) (citation and quotations

22  omitted).  When a federal statute does not provide direction, the Ninth Circuit has applied the

23  federal common law of agency and agency principles from the Third Restatement of Agency.

24  *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017).

25          Regardless, plaintiff's indirect claim against the Wyndham brand defendants for

26  beneficiary liability must still be dismissed because, as analyzed above, plaintiff has failed to

27  state a cognizable claim against defendant Vitarag.  *See B.J.*, 2023 WL 3569979, at *7 (finding

28  that the plaintiff's vicarious liability claims against the Franchisor defendants "necessarily fail

1   because, as set forth above, B.J. has failed to state a claim for direct liability against their

2   respective franchisees"). Plaintiff's factual allegations against defendant SKAVP, the other Days

3   Inn franchisee defendant, are identical to her factual allegations as to defendant Vitarag and thus

4   suffer from the same deficiencies discussed above. Accordingly, this claim will be dismissed, but

5   as with the direct liability claims, the court will grant plaintiff leave to amend.

6               b.    *Defendant Marriott*

7       Defendant Marriott argues that the agency beneficiary liability claim brought against it

8   also fail because plaintiff has not plausibly alleged an agency relationship between defendant

9   Campbell HHG and defendant Marriott. (Doc. No. 45 at 24.) According to defendant Marriott,

10  plaintiff's FAC only alleges that it had a franchisor-franchisee relationship with defendant

11  Campbell HHG. (*Id*. at 25.)

12      Under California law, "a franchisee may be deemed to be the agent of the franchisor."

13  *Kuchta v. Allied Builders Corp*., 21 Cal. App. 3d 541, 547 (1971). "The general rule is that, if a

14  franchise agreement gives the franchisor the right of complete or substantial control over the

15  franchisee, an agency relationship exists." *Walker v. Pac. Pride Servs., Inc*., 341 F. App'x 350,

16  351 (9th Cir. 2009) (citing *Kuchta*, 21 Cal. App. 3d at 547).[5] In the TVPRA context, "the

17  franchisor-franchisee relationship is not a principal-agent relationship unless the franchisor

18  exercises control over the day-to-day operations of the franchisee such that it controls the

19  instrumentality that caused the plaintiff's harm." *J.C.*, 2020 WL 6318707, at *8.

20      The court is satisfied that plaintiff has alleged sufficient facts to establish a plausible claim

21  of an agency relationship between defendant Marriott and defendant Campbell HHG. In her

22  FAC, plaintiff alleges that defendant Marriott "exercised systemic control over [defendant

23  Campbell HHG] with respect to operation of the Campbell Marriott," including through policies

24  and procedures regarding hotel security, identification requirements, payment method

25  requirements, response to signs of human trafficking, and requirements for hotel staff to report

26  suspicions of criminal activity. (Doc. No. 36 at ¶ 51.) She also alleges that defendant Marriott

27  ———————————

[5] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit
28  Rule 36-3(b).

17

supervised and controlled "day-to-day operations of the Campbell Marriott through detailed information and extensive reports that it obtained through the property management system and other software systems it required [defendant Campbell HHG] to use." (*Id*. at ¶ 102.)  Plaintiff further alleges that defendant Marriott restricted the ability of the franchisee to refuse or cancel a reservation, controlled the price of rooms, and controlled all details of the customer loyalty program that the franchisee was required to implement.  (*Id*. at ¶ 142.)  Finally, plaintiff alleges that defendant Marriott exercised control over defendant Campbell HHG by requiring mandatory training and dictating the content of such training, designating approved vendors for certain products and services, setting required staffing levels, establishing job descriptions, setting hiring requirements, overseeing employee discipline and termination decisions, conducting regular audits and frequent inspections, and imposing detailed recordkeeping requirements, among other methods.  (*Id*. at ¶ 182.)  These allegations provide a sufficient basis upon which to assert that a franchisor exercised substantial control for the purposes of an agency relationship.  *See B.M.*, 2020 WL 4368214, at *6 (finding that the plaintiff had adequately asserted an agency relationship where she alleged that the franchisor defendant set employee wages, made employee decisions, and standardized training methods for employees at the hotels); *J.C.*, 2020 WL 6318707, at *9 (finding that the plaintiff's allegation that "an agency relationship was created through Marriott's exercise of an ongoing and systematic right of control over its hotels, beyond that which is necessary to maintain brand standards, including hosting online bookings, setting employee wages, making employee decisions, and standardized training methods for employees" was "enough to get her past the pleadings stage").  Accordingly, the court rejects defendant Marriott's argument that plaintiff's allegations regarding an agency relationship are deficient.

Defendant Marriott also argues that this claim must be dismissed because plaintiff has failed to adequately state a claim for direct liability against defendant Campbell HHG.  (Doc. No. 45 at 24.)  Defendant Marriott argues that plaintiff's FAC does not contain plausible allegations that defendant Campbell HHG participated in the venture that trafficked plaintiff or had actual or constructive knowledge of her trafficking.  (*Id*. at 9.)  Defendant Marriott contends that this is in

/////

1   part because plaintiff has alleged no interactions between herself and the employees of the

2   Campbell Marriott.  (*Id.* at 11.)

3           The court finds defendant Marriott's argument in this regard to be unpersuasive.  In her

4   FAC, plaintiff alleges that she had interactions with front desk staff at the Campbell Marriott

5   during which her trafficker would present plaintiff's identification card while booking a room in

6   her name. (Doc. No. 36 at ¶ 106.)  She also alleges that in common areas of the hotel she

7   exhibited obvious signs of trafficking that were observed by hotel staff, including that her

8   trafficker would yell at her and be violent with her.  (*Id.* at ¶ 108.)  She alleges that other obvious

9   signs of her trafficking were observed throughout her three-night stay at the hotel as well, such as:

10  her tattered and inappropriate clothing, her malnourished and sleep-deprived body, her visible

11  bruises, her fear and anxiety, her drugged state, her suffering of physical and verbal abuse in

12  public spaces of the hotel, heavy foot traffic in and out of her room of men who were not hotel

13  guests, her traveling with a group of girls and an older person, her declining of room service, her

14  requests for excessive towels and sheets, the sounds of screaming and crying from her room, the

15  signs of sex paraphernalia and drug use in her hotel room, her lack of personal items, and more.

16  (*Id.* at ¶¶ 45, 107, 109.)  Further, she alleges that she and her trafficker would pay for her room on

17  a day-to-day basis, and that each day her trafficker would escort her to the lobby to pay the day's

18  rate.  (*Id.* at ¶ 106.)  Together, these allegations support the reasonable inference that hotel staff

19  acquired knowledge during plaintiff's stay that she was being sex trafficked and subjected to the

20  use of force, yet they nonetheless continued to transact business with her and her traffickers, thus

21  creating a continuous business relationship.  *J.C.*, 2020 WL 6318707, at *5–7 (finding that the

22  plaintiff "plausibly plead[] that [the] defendants directly 'participated in a venture' by providing

23  lodging to people it knew or should have known were engaged in her sex trafficking" and that

24  that similar allegations of signs of trafficking were "more than sufficient to state a claim that the

25  local hotels knew or should have known J.C. was a sex trafficking victim").  Accordingly, the

26  court will deny defendant Marriott's motion to dismiss plaintiff's agency claim brought against it.

27  /////

28  /////

19

1    **B.**    **Perpetrator Liability Claims**

2              As noted above, the TVPRA creates civil liability for defendants who have knowingly

3    benefitted from TVPRA ventures (beneficiary liability) and for those who have themselves

4    committed a criminal offense under § 1591 of the TVPRA (perpetrator liability).  Section 1591

5    imposes criminal sanctions on "whoever knowingly . . . recruits, entices, harbors, transports,

6    provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . .

7    knowing . . . that means of force, threats of force, fraud, coercion . . . or any combination of such

8    means will be used to cause the person to engage in a commercial sex act."  18 U.S.C. § 1591(a).

9    "Section 1591 imposes an actual knowledge requirement."  *J.M. v. Choice Hotels Int'l, Inc.*, No.

10   2:22-cv-00672-KJM-JDP, 2023 WL 3456619, at *2 (E.D. Cal. May 15, 2023) (citation omitted).

11             Plaintiff asserts a perpetrator liability claim against the Franchisee defendants for

12   "harbor[ing] individuals (including Jane Doe T.R.S.) at the Subject Hotels knowing or in reckless

13   disregard of the fact that the victims would be caused, through force, coercion, or fraud, to engage

14   in commercial sex acts while at their respective hotel properties."  (Doc. No. 36 at ¶ 197(a).)  She

15   also asserts that the Franchisor defendants are vicariously liable for the actions of the Franchisee

16   defendants as perpetrators.  (*Id*. at ¶¶ 208–09.)[6]

17             As noted above, defendant Vitarag is the only Franchisee defendant among the moving

18   defendants.  In its pending motion to dismiss plaintiff's FAC, defendant Vitarag argues that

19   plaintiff has not alleged facts showing that it harbored plaintiff or had actual knowledge that fraud

20   or force would be used to cause her to engage in a commercial sex act.  (Doc. No. 47 at 10.)

21             The court agrees that plaintiff has not adequately alleged facts supporting defendant

22   Vitarag's actual knowledge of her trafficking for purposes of a perpetrator liability claim.  This is

23   in part because, as has been repeatedly noted above, many of plaintiff's allegations advanced in

24   support of her claim of staff knowledge of her sex trafficking are inconsistent with her allegation

25   that her stay at the Sacramento Days Inn was only one-night in duration.  Though a court must

26

27   _____

     [6]  The court notes that the Franchisor defendants present no arguments in support of the dismissal
     of this claim in their motions other than their arguments regarding the unavailability of agency
28   liability, which the court has already rejected.  (Doc. Nos. 45, 46-1.)

1   generally accept allegations in a complaint as true at the motion to dismiss stage, the court need

2   not accept inconsistent allegations in a complaint as true. *See Jones v. Pollard*, No. 21-cv-00162-

3   MMA-RBM, 2022 WL 706926, at *5 (S.D. Cal. Mar. 9, 2022) (citing *Walsh v. Sacramento*, No.

4   2:13-cv-02077-MCE-KJN, 2014 WL 4472752, at *10 (E.D. Cal. Sep. 11, 2014)); s*ee also In re*

5   *Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 424 (S.D.N.Y. 2021) ("[W]here a

6   plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor

7   accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss.")

8   (citation omitted).  Accordingly, the court will grant defendant Vitarag's motion to dismiss

9   plaintiff's perpetrator liability claim.  The court will also grant plaintiff leave to amend her FAC

10  to eliminate the noted inconsistencies therein and to clarify the basis of defendant Vitarag's

11  claimed actual knowledge.  Having found this claim subject to dismissal, the court will also

12  dismiss plaintiff's vicarious perpetrator liability claim brought against defendant Vitarag's

13  associated franchisors, the Wyndham brand defendants.

14  **C.      Shotgun Pleading**

15          Finally, defendant Marriott argues that plaintiff's FAC should be dismissed as an

16  impermissible shotgun pleading.  (Doc. No. 45 at 27.)[7]  "Shotgun pleadings are pleadings that

17  overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for

18  defendants to make informed responses to the plaintiff's allegations." *Sollberger v. Wachovia*

19  *Sec., LLC*, No. 09-cv-00766-AG-AN, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010).  The

20  court does agree that the FAC contains various group allegations, some directed at all defendants

21  or at all hotels and some directed at just Franchisor or Franchisee defendants.  (Doc. No. 45 at

22  28.)  The court also observes that the FAC is not a model of clarity.  As noted several times

23  above, plaintiff's allegations that refer to both Subject Hotels conflict with plaintiff's other

24  allegations regarding the timing of her trafficking, particularly at the Sacramento Days Inn.

25  Nonetheless, plaintiff does identify the specific hotel locations where she was allegedly

26

27  [7]  Defendant Vitarag also requests that this court order plaintiff to provide a more definite
    statement.  (Doc. No. 47 at 15.)  However, because defendant Vitarag's motion to dismiss will be
28  granted in full, with leave to amend, the court denies its request as having been rendered moot.

trafficked, explains the relationship between those locations and each defendant, and alleges some distinct facts as to each defendant.  (Doc. No. 36 at ¶¶ 37–51.)  She has also alleged details about when she visited each location and for what period of time.  *Id.; see B.M.*, 2020 WL 4368214, at *8 (finding the plaintiff's complaint was not a shotgun complaint even where those temporal details were missing).  Thus, the FAC cannot be fairly categorized as an "everyone did everything" shotgun pleading.  *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011).  That said, because the court is granting plaintiff leave to amend her FAC, she is instructed that if she takes the opportunity to file a second amended complaint, she should include as many details as possible in her allegations about her stays at each location, her trafficker(s), and any interactions with specific hotel staff in order to improve the clarity of her operative complaint and reduce the risk of confusion.

## CONCLUSION

For the reasons explained above:

1.    Defendant Vitarag Hospitality Inc.'s motion to dismiss (Doc. No. 47) is granted in its entirety, with leave to amend;

2.    The Wyndham brand defendants' (Days Inn Worldwide, Inc., Wyndham Hotel Group, LLC, and Wyndham Hotels and Resorts) motion to dismiss (Doc. No. 46) is granted in its entirety, with leave to amend;

3.    Defendant Marriott International, Inc.'s motion to dismiss (Doc. No. 45) is granted in part and denied in part as follows:

   a.   Defendant Marriott International, Inc.'s motion to dismiss plaintiff's direct beneficiary liability claim against it is granted, with leave to amend;

   b.   Defendant Marriott International, Inc.'s motion to dismiss plaintiff's agency liability claims against it is denied;

4.    Within twenty-one (21) days from the date of entry of this order, plaintiff shall file either a second amended complaint, or a notice of her intent not to file a second amended complaint and to proceed only on her surviving claims; and

/////

22

5.     In accordance with the parties' stipulation (Doc. No. 49) and the court's prior order (Doc. No. 50), the parties shall file a joint status report regarding scheduling no later than fourteen (14) days after the issuance of this order.

IT IS SO ORDERED.

Dated:   **June 20, 2024**                    _Dale A. Drozd_
                                             DALE A. DROZD
                                             UNITED STATES DISTRICT JUDGE

23