UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, *also known as T.R.S.*, | No. 2:23-cv-01676-DAD-CSK |
| Plaintiff, | |
| v. | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS |
| WYNDHAM HOTELS AND RESORTS, et al., | |
| Defendants. | (Doc. Nos. 70, 71, 72) |

This matter is before the court on three motions to dismiss, one filed by defendants Wyndham Hotels & Resorts, Inc. ("WHR"), Days Inn Worldwide, Inc., and Wyndham Hotel Group, LLC (collectively, "the Wyndham brand defendants") (Doc. No. 70), one filed by defendant Marriott International Inc. d/b/a Courtyard by Marriott San Jose Campbell ("defendant Marriott") (Doc. No. 71), and one filed by defendant Vitarag Hospitality, Inc. ("defendant Vitarag") (Doc. No. 72). All three motions were filed on July 23, 2024, and on the completion of briefing were taken under submission on the papers pursuant to Local Rule 230(g). (Doc. No. 74.) For the reasons explained below, the court will grant in part and deny in part motions to dismiss filed on behalf of defendant Vitarag and the Wyndham brand defendants and will deny in full defendant Marriott's motion. Further leave to amend will also be denied.

/////

1

1   On August 11, 2023, plaintiff Jane Doe, also known as T.R.S., initiated this action

2   asserting that she suffered harms and losses due to the sex trafficking she allegedly endured at the

3   Days Inn Sacramento Downtown hotel (the "Sacramento Days Inn") and the Courtyard by

4   Marriott San Jose Campbell hotel (the "Campbell Marriott") (collectively, the "Subject Hotels").

5   (Doc. No. 1.)  On December 29, 2023, defendants Marriott and WHR filed motions to dismiss

6   plaintiff's complaint.  (Doc. Nos. 28, 32.)  On January 11, 2024, plaintiff filed her first amended

7   complaint ("FAC") which rendered moot the motions to dismiss that had been filed in December

8   2023.  (Doc. Nos. 36, 37.)  On February 29, 2024, defendant Marriott, defendant Vitarag, and the

9   Wyndham brand defendants (collectively, "the moving defendants") each filed motions to dismiss

10  plaintiff's FAC in its entirety pursuant to Rule 12(b)(6).  (Doc. Nos. 45, 46, 47.)  On June 20,

11  2024, the court granted in part and denied in part the moving defendants' motions, and granted

12  plaintiff leave to amend her FAC.  On July 9, 2024, plaintiff filed her operative second amended

13  complaint ("SAC").

14  In her SAC, plaintiff asserts a single cause of action under the Trafficking Victims

15  Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1591, *et seq*., against each of the

16  following defendants:  defendant Marriott, the Wyndham brand defendants, defendant Vitarag,

17  and defendant Campbell HHG Hotel Development, LP ("defendant Campbell HHG")

18  (collectively, "the defendants").[1]

19  In her SAC, plaintiff alleges as follows.  Plaintiff is a resident of Kansas City, Missouri

20  and was a victim of sex trafficking starting in 2012 and continuing through 2018.  (Doc. No. 68 at

21  ¶¶ 9, 27, 28, 34.)  Plaintiff was unlawfully trafficked at the Sacramento Days Inn on at least two

22  occasions, once on dates including August 10 and August 11, 2013, and at least once prior to

23

24  [1]  The court observes that plaintiff lists SKAVP Enterprises, LP ("defendant SKAVP") as a
    defendant in this action, but her SAC contains no allegations regarding defendant SKAVP.  (Doc.

25  No. 68 at 1.)  Further, plaintiff has not filed a proof of service on the docket as to defendant
    SKAVP, and no attorney has appeared on behalf of defendant SKAVP.  Accordingly, because

26  more than 90 days have passed since the SAC was filed and no proof of service has been filed
    with the court, plaintiff will be ordered to show cause why this action should not be dismissed as

27  to defendant SKAVP.  Fed. R. Civ. P. 4(m); *see also* Fed. R. Civ. P. 4(*l*)(1) ("Unless service is
    waived, proof of service must be made to the court.").

28

1   August 2013. (*Id.* at ¶ 70.) The Wyndham brand defendants and defendant Vitarag jointly

2   operated the Sacramento Days Inn. (*Id.* at ¶ 4.) Plaintiff's traffickers regularly used the

3   Sacramento Days Inn for purposes of sex trafficking. (*Id.* at ¶ 2.) There were obvious signs of

4   plaintiff being trafficked at the Sacramento Days Inn, including the fact that hotel rooms would

5   be paid for in cash or prepaid card, she would be in the hotel with a group of women and much

6   older men, she had few personal possessions, she had visible injuries, her traffickers' car was

7   parked in a way where the license plate was not visible, she would not leave her room unless

8   escorted by traffickers, she was forbidden from making eye contact or communicating with

9   anyone, the "Do Not Disturb" sign was frequently on the door to the room being used, and there

10   was a high volume of men who were not hotel guests coming in and out of her room. (*Id.* at

11   ¶ 78.) These individuals entered and left at unusual hours and were present at the hotel for brief

12   periods of time. (*Id.*) Further, hotel staff at the Sacramento Days Inn interacted directly with

13   plaintiff's traffickers, as front desk staff knew her traffickers' first names and allowed them to

14   check in without providing any identification. (*Id.*) Hotel staff also came to plaintiff's room,

15   looked in the room, and saw evidence of commercial sex and drug use, including condoms,

16   lubricant, and illegal drugs. (*Id.*) While at the Sacramento Days Inn, plaintiff's traffickers

17   ordered her to attempt to pick up men on the street, which was a departure from the traffickers'

18   usual practice of advertising her online and arranging meetings directly. (*Id.*) When plaintiff

19   resisted this order, three of her traffickers beat her, leaving visible injuries. (*Id.*)

20        On or about September 4–7, 2013, plaintiff was unlawfully trafficked at the Campbell

21   Marriott. (*Id.* at ¶ 135.) Plaintiff recalls being trafficked at this location at least five times for

22   several nights at a time, but these are the only dates that she can specifically recall based on her

23   memory and the documentation currently available to her. (*Id.*) Defendants Marriott and

24   Campbell HHG operated the Campbell Marriott.[2] (*Id.* at ¶ 6.) Many of the same obvious signs of

25   plaintiff being trafficked were present at the Campbell Marriott as well. (*Id.* at ¶ 148.) In

26

27   [2] Although plaintiff does not use these characterizations in her SAC, the court will refer to the
    Wyndham brand defendants and defendant Marriott as the "Franchisor defendants" and

28   defendants Vitarag and Campbell HHG as the "Franchisee defendants."

1  addition, rooms at the Campbell Marriott were often booked for one day at a time and then

2  extended with proceeds earned from trafficking.  (*Id.*)  Front desk staff at the Campbell Marriott

3  would fist bump one of plaintiff's traffickers and have lengthy conversations with him in a

4  "shared foreign language."  (*Id.*)  A maintenance staff member at the Campbell Marriott who

5  knew plaintiff's traffickers provided them with a master key to facilitate their activities.  (*Id.*)

6  While at the Campbell Marriott, plaintiff would see approximately twenty men per night.  (*Id.*)

7  Plaintiff had recently been beaten when she was brought to the Campbell Marriott in September

8  2013 and still had visible injuries, including bruising and a burst blood vessel in her eye.  (*Id.*)

9         Throughout the time she was being trafficked, plaintiff's traffickers maintained control

10  over her identification documents and restricted her access to money.  (*Id.* at ¶ 29.)  Plaintiff was

11  required to earn a certain amount of money through commercial sex, but her traffickers kept the

12  proceeds.  (*Id.* at ¶ 30.)  Plaintiff had limited access to clothing and exhibited obvious signs of

13  fear and anxiety.  (*Id.* at ¶ 33.)  Her traffickers used physical violence, threats of violence,

14  financial dependence, extreme restrictions on her freedom, and coercive control to require her to

15  engage in commercial sex.  (*Id.* at ¶ 27.)  Her traffickers had established relationships with

16  members of the hotel staff at both the Sacramento Days Inn and the Campbell Marriott.  (*Id.* at

17  ¶ 31.)  Plaintiff received an unusually large number of sheets and towels as well as

18  disproportionate housekeeping services while at both Subject Hotels.  (*Id.* at ¶¶ 96, 112, 157,

19  174.)  When hotel staff would enter the room to change sheets or towels, they had an opportunity

20  to observe her physical injuries, distressed demeanor, and the evidence of illegal activity.  (*Id.* at

21  ¶ 148.)  Hotel staff also observed condoms, sex paraphernalia, and signs of illegal drug use left

22  behind in the rooms after visits.  (*Id.*)

23         Based on obvious signs of illegal activity, defendant Vitarag and defendant Campbell

24  HHG, as the franchisees of the Subject Hotels, made reports to the Wyndham brand defendants

25  and defendant Marriott, the franchisors of the Subject Hotels, about the activities of plaintiff's

26  traffickers prior to plaintiff's own trafficking.  (*Id.* at ¶¶ 88, 146.)

27         The Franchisor defendants monitored the criminal activity occurring in their branded

28  hotels.  (*Id.* at ¶¶ 59, 61, 66.)  They also directly received payments and real-time guest

4

information.  (*Id*. at ¶¶ 90, 147, 188.)  Multiple news stories reported sex trafficking at various Days Inn and Marriott properties, and online reviews discussed prostitution and criminal activity at the Subject Hotels.  (*Id*. at ¶¶ 59, 61, 66, 68, 74.)  Traffickers chose to operate at hotels run by the Franchisor defendants because their policies, procedures, practices, and single-minded focus on profit-maximization were known to create a favorable environment for sex trafficking.  (*Id*. at ¶¶ 31, 54, 64, 69, 76, 77, 92, 97, 105, 153, 158, 163, 167.)

Based on these and other allegations set forth in her FAC, plaintiff asserts her single cause of action for sex trafficking under the TVPRA against all defendants.  (*Id.* at 82.)  With respect to that cause of action, plaintiff pursues a beneficiary liability theory against all defendants, a perpetrator liability theory against defendant Vitarag and defendant Campbell HHG, and a vicarious liability theory against the Wyndham brand defendants and defendant Marriott for violations of that provision by defendant Vitarag and defendant Campbell HHG as both beneficiaries and perpetrators.  (*Id*. at ¶¶ 193–211.)

On July 23, 2024, the moving defendants filed motions to dismiss plaintiff's SAC in its entirety pursuant to Rule 12(b)(6).  (Doc. Nos. 70, 71, 72.)  On August 13, 2024, plaintiff filed oppositions to those motions.  (Doc. Nos. 75, 76, 77.)  The moving defendants each filed replies thereto on August 30, 2024.  (Doc. Nos. 78, 79, 80.)[3]

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

---

[3]  After the pending motions were fully briefed, on September 17, 2024, plaintiff filed a notice of supplemental authority to alert the court of a then recent decision by another district court in *Jane Doe (A.R.J.) v. Wyndham Hotels & Resorts, Inc*., No. 1:24-cv-00109-DAE (W.D. Tex. Aug. 30, 2024).  (Doc. No. 81.)  On September 23, 2024, defendant Marriott filed a notice of supplemental authority to alert the court of a then recent decision by another district court in *Jane Doe (G.N.C.) v. Uniquest Hosp., LLC, et al*., No. 23-cv-07980-PKC (S.D.N.Y. Sept. 11, 2024).  (Doc. No. 82.)  On September 24, 2024, plaintiff filed another notice of supplement authority, which again notified the court of the recent decision in *Jane Doe (A.R.J.)* and also notified the court of the then recent decisions in *D.D.J. v. G6 Hosp.*, 1:23-cv-00269-MJT (E.D. Tex. Sept. 20, 2024) and *Doe L.M. v. 42 Hotel Raleigh, LLC*, 5:23-cv-00235-FL (E.D.N.C. Sept. 16, 2024).  (Doc. No. 83.)

1  sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901

2  F.2d 696, 699 (9th Cir. 1988).  A plaintiff is required to allege "enough facts to state a claim to

3  relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

4  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

5  the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

6  *Iqbal*, 556 U.S. 662, 678 (2009).

7        In determining whether a complaint states a claim on which relief may be granted, the

8  court accepts as true the allegations in the complaint and construes the allegations in the light

9  most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However,

10  the court need not assume the truth of legal conclusions cast in the form of factual allegations.

11  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not

12  require detailed factual allegations, "it demands more than an unadorned, the-defendant-

13  unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers

14  mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

15  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements

16  of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is

17  inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the

18  defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen.*

19  *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

20                                              **ANALYSIS**

21        The TVPRA makes forced labor and sex trafficking criminal offenses.  18 U.S.C. § 1591;

22  *see also J.C. v. Choice Hotels Int'l, Inc*., No. 20-cv-00155-WHO, 2020 WL 6318707, at *3 (N.D.

23  Cal. Oct. 28, 2020).  "In addition to the criminal prohibition," the TVPRA also "creates civil

24  liability for two categories of defendants:  (1) those who have themselves committed a criminal

25  offense under § 1591 of the TVPRA (i.e., perpetrator liability), and (2) those who are not

26  themselves subject to criminal liability but who knowingly benefitted from participation in a

27  venture that they knew or should have known was committing an offense under § 1591 of the

28  TVPRA (i.e., beneficiary liability)."  *B.J. v. G6 Hosp., LLC*, No. 22-cv-03765-MMC, 2023 WL

6120682, at *3 (N.D. Cal. Sept. 18, 2023) (internal citations and quotations omitted).  As noted, in her SAC, plaintiff asserts both beneficiary and perpetrator theories of liability.  The court will address both theories of liability below.

A.      **Plaintiff's Beneficiary Liability Claims**

"To state a claim under a section 1595(a) beneficiary theory, [the plaintiff] must allege facts from which it can reasonably [be] inferred that [the defendants] (1) knowingly benefitted financially or by receiving anything of value; (2) from participation in a venture; (3) they knew or should have known has engaged in sex trafficking."  *J.C.*, 2020 WL 6318707, at *4 (internal citations and quotations omitted).  "A plaintiff may satisfy these elements in one of two ways.  Specifically, such plaintiff may show that the defendant's own acts, omissions, and state of mind establish each element, i.e., that such defendant is directly liable under the statute, or such plaintiff may impute to the defendant the acts, omissions, and state of mind of an agent of the defendant, i.e., that the defendant is indirectly, or vicariously, liable under the statute."  *B.J.*, 2023 WL 6120682, at *3 (internal citations and quotations omitted).

As this court noted in its prior order addressing the moving defendants' earlier motions to dismiss, some district courts have analyzed these components as three distinct elements (*see J.C.*, 2020 WL 6318707, at *4) and others have addressed the second and third elements as if they are a combined, single element.  *See, e.g., A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1024–28 (D. Or. 2021) (analyzing whether the defendant "knowingly benefitted" as the first element and whether it "participated in a venture which it knew or should have known engaged in sex trafficking" as the second element); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 935–39 (D. Or. 2020) (same); *see also B.J.*, 2023 WL 6120682, at *4 (internal quotation and citation omitted) ("The third prong of a direct beneficiary liability claim overlaps substantially with the second . . . .").  The allegations in plaintiff's SAC again present significant overlap between the second and third elements of her claim, as her description of the ventures that the defendants allegedly participated in again involve their knowledge of her trafficking.  Plaintiff first alleges that each defendant took part in a venture that resulted when they developed continuous business relationships with plaintiff's traffickers and other traffickers by renting them rooms and

1   creating an environment that facilitated their trafficking activities despite the fact that each

2   defendant knew or should have known of the sex trafficking ("Venture 1").[4]  (Doc. No. 68 at

3   ¶¶ 111, 115, 173, 177, 197, 199.)  Plaintiff also alleges that the Franchisor defendants participated

4   in a venture regarding the operation of the Subject Hotels through a continuing business

5   relationship with the Franchisee defendants wherein the Franchisee defendants operated the

6   Subject Hotels in a way that they knew or should have known was facilitating sex trafficking, and

7   the Franchisor defendants supported aspects of hotel operations that they knew or should have

8   known were facilitating trafficking and continued to provide marketing services for the hotel after

9   they knew or should have known that the venture was violating the TVPRA ("Venture 2").[5]

10  (Doc. No. 68 at ¶¶ 116–121, 178–183, 198, 200.)

11          The court will again adopt the latter approach noted above and will analyze the

12  defendants' participation in a venture and knowledge that the venture was engaged in sex

13  trafficking as one combined element, given plaintiff's allegations in this case that the ventures

14  themselves involved defendant knowledge.  The court will first address plaintiff's direct

15  beneficiary liability claim as it pertains to defendant Vitarag (the only Franchisee defendant

16  among the moving defendants) and the Franchisor defendants, and then will turn to plaintiff's

17  vicarious beneficiary liability claim.

18          1.    Direct Beneficiary Liability Claims

19                a.    *Defendant Vitarag's Participation in a Venture Which it Knew or Should*

20                      *Have Known Engaged in Sex Trafficking*

21          In its pending motion, defendant Vitarag argues that plaintiff has failed to sufficiently

22  plead that it "knowingly participat[ed] in a venture that was engaged in conduct that violated the

23

24  [4]  In her SAC, plaintiff separates Venture 1 into "Days Inn Venture 1" involving the Wyndham

25  brand defendants and defendant Vitarag, and "Marriott Venture 1" involving defendants Marriott and Campbell HHG, but her allegations are otherwise identical.  (Doc. No. 68 at 83–86.)

26
    [5]  In her SAC, plaintiff also separates Venture 2 into "Days Inn Venture 2" involving the

27  Wyndham brand defendants and defendant Vitarag, and "Marriott Venture 2" involving defendants Marriott and Campbell HHG, but again her allegations are otherwise identical.  (Doc.

28  No. 68 at 84–87.)

1    TVPRA" and "knew or should have known the venture was engaged in trafficking."  (Doc. No.

2    72 at 12, 14.)

3           "The phrase 'participation in a venture' requires that the [plaintiff] allege that [the

4    defendants] took part in a common undertaking or enterprise involving risk and potential profit."

5    *B.J. v. G6 Hosp., LLC*, No. 22-cv-03765-MMC, 2023 WL 3569979, at *4 (N.D. Cal. May 19,

6    2023).  The allegations must "connect the dots between [the p]laintiff's alleged sex trafficking

7    and these [d]efendants."  *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020

8    WL 4368214, at *5 (N.D. Cal. July 30, 2020); *see also Doe v. Wyndham Hotels and Resort*, No.

9    8:23-cv-01554-JVS-JDE, 2024 WL 2104596, at *3 (C.D. Cal. Feb. 28, 2024).  "[T]here are two

10   ways in which a plaintiff can connect the dots between the plaintiff's experience as a victim of

11   sex trafficking and the specific defendant in the lawsuit for purpose of pleading the second prong

12   of a TVPRA claim:  by alleging a direct association between the defendant hotel and the

13   plaintiff's trafficker, or by showing a continuous business relationship between a defendant hotel

14   and a sex trafficker where the defendant rented rooms to people it knew or should have known

15   were engaged in sex trafficking."  *B.J.*, 2023 WL 6120682, at *4 (citation omitted); *see also B.J.*,

16   2023 WL 3569979, at *4 (noting that a plaintiff can allege a defendant's participation in a venture

17   through allegations that show "a continuous business relationship between the trafficker and the

18   defendant such that it would appear that the trafficker and the defendant have established a

19   pattern of conduct or could be said to have a tacit agreement").

20          In her SAC, plaintiff again does not allege a direct association between defendant Vitarag

21   and her traffickers.  Instead, she alleges that defendant Vitarag took part in Days Inn Venture 1

22   which involved continuous business relationships with sex traffickers.  (Doc. No. 68 at 83.)

23   Defendant Vitarag argues that plaintiff does not plausibly allege the connection between itself and

24   plaintiff's traffickers.  (Doc. No. 72 at 13.)  Defendant Vitarag also contends that at most, plaintiff

25   has alleged that it received a financial benefit from renting a room to a person engaged in sex

26   trafficking, and there were visible signs that plaintiff was being trafficked during her one-night stay

27   in August 2013 at the Sacramento Days Inn.  (*Id*. at 13, 15.)  According to defendant Vitarag, its

28   observations of her alleged trafficking, even including her allegation that she was trafficked at the

9

1    same hotel at least once prior to August 2013, if proven would not support a finding of its

2    participation in a venture as required to state a cognizable direct beneficiary liability claim under

3    1595(a).  (*Id.*)

4         The court notes that plaintiff has added new allegations to her SAC in support of her

5    beneficiary liability claim.  She now alleges that she was trafficked at the Sacramento Days Inn at

6    least twice, and that her traffickers repeatedly and regularly used this hotel to traffic other victims,

7    often trafficking victims at this hotel when plaintiff was not present.[6]  (Doc. No. 68 at ¶ 75.)

8    Plaintiff also now alleges that her traffickers were on a first-name basis with staff members at the

9    Sacramento Days Inn.  (*Id.* at ¶ 76.)  Further, she describes that when checking in at the

10   Sacramento Days Inn, her traffickers interacted with the hotel staff but forbid their victims, who

11   were dressed provocatively and had few personal possessions, from making eye contact or

12   speaking.  (*Id.* at ¶ 80.)  Plaintiff alleges that these strict rules produced noticeable effects on her

13   behavior that were observed by hotel staff, and that she had visible injuries that were also obvious

14   and apparent to the hotel staff.  (*Id.* at ¶¶ 33, 78.)  Plaintiff also alleges that her traffickers would

15   refuse to provide their own identification when checking in, and a hotel employee who worked

16   the front desk at the Sacramento Days Inn knew her traffickers and did not require them to

17   provide any identification.  (*Id.* at ¶¶ 76, 80.)  Plaintiff further renews the allegations of her FAC,

18   including that hotel staff at the Sacramento Days Inn provided additional services to her

19   traffickers, such as excessive extra towels and housekeeping, and allowed her traffickers to take

20   steps that would minimize their traceability, such as permitting cash or prepaid card payments for

21   hotel rooms.  (*Id.* at ¶¶ 78, 96.)

22        As stated above, in order to connect the dots between plaintiff's experience as a victim of

23   sex trafficking and defendant Vitarag, plaintiff must allege facts supporting a continuous business

24   relationship between defendant Vitarag and sex traffickers where defendant Vitarag rented rooms

25   to people it knew or should have known were engaged in sex trafficking.  *B.J.*, 2023 WL

26   _____

27   [6]  In this regard, plaintiff further explains that, because the Sacramento Days Inn was located near
     her former residence, her traffickers were concerned that she would escape and often avoided
     bringing her there, although it was one of their preferred hotels for the trafficking of other

28   victims.  (Doc. No. 68 at ¶ 75.)

6120682, at *4 (citation omitted).  In its prior order, the court found that plaintiff's FAC was deficient in this regard, particularly because plaintiff only alleged that she was trafficked at the Sacramento Days Inn for a one-night stay, and the court did not find that plaintiff had adequately alleged that hotel employees had prior interactions with her traffickers such that defendant Vitarag should have known that it was renting rooms to people participating particularly in sex trafficking.  (Doc. No. 65 at 10.)  Upon amendment, plaintiff has now alleged that her traffickers visited the Sacramento Days Inn numerous times for their trafficking activities and had interactions with hotel staff each time during which the staff observed behaviors and injuries consistent with and specific to sex trafficking.  (Doc. No. 68 at ¶¶ 75–80.)  These additional factual allegations support a reasonable inference that there was an ongoing business relationship between plaintiff's traffickers and defendant Vitarag such that, when plaintiff was trafficked at the Sacramento Days Inn in August 2013, hotel staff rented a room to her traffickers with at least constructive knowledge that they were engaged in sex trafficking.  *See J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2020 WL 4901196, at *11 (N.D. Cal. Aug. 20, 2020) (noting that allegations that the plaintiff "was seen by employees with physical injuries or other facts suggesting coercion allow courts to infer that motel or hotel employees should have known that human trafficking was occurring, as opposed to other criminal conduct, such as prostitution" for the purposes of finding that the plaintiff has stated a claim for beneficiary liability under the TVPRA).

Accordingly, the court finds that plaintiff has plausibly alleged that defendant Vitarag participated in a venture that it should have known was engaged in sex trafficking through a continuous business relationship with plaintiff's traffickers.  *See Doe (G.N.C.)*, 2024 WL 4149251, at *3 (finding that in totality, the plaintiff's allegations that she "stayed for extended periods," that housekeeping staff were "prevented from entering the room," and that her trafficker was often present with her at check-in and "limited her ability to communicate with hotel staff, such that it was obvious and apparent she was being subjected to coercion and control" were sufficient to state a claim for beneficiary liability against the franchisee defendant); *Doe v. Wyndham Hotels & Resorts, Inc.*, No. 1:24-cv-00109-DAE, 2024 WL 4224915, at *9 (W.D. Tex.

1   Aug. 30, 2024) (noting that "participation in a hotel-operating venture qualifies as participation in

2   a venture under Section 1595(a) when the hotel operates in a manner that facilitates sex

3   trafficking" and finding that the plaintiff had stated a claim for beneficiary liability against the

4   franchisee defendant where she alleged "that the traffickers developed a relationship with

5   employees at the hotel" and "that the hotel employees accommodated specific requests made by

6   the traffickers").

7          Accordingly, the court will deny defendant Vitarag's motion to dismiss plaintiff's direct

8   beneficiary claim brought against it.

9          b.    *The Franchisor Defendants*

10         The court next considers plaintiff's direct beneficiary liability claims brought against the

11   Franchisor defendants, all of whom have moved to dismiss plaintiff's FAC.  (Doc. Nos. 70, 71.)

12   The required elements as to the Franchisor defendants are the same as discussed above:  "a

13   plaintiff must allege facts plausibly establishing the defendant (1) knowingly benefited financially

14   (2) from participation in a venture (3) that [the] [d]efendant knew or should have known engaged

15   in sex trafficking as defined in 18 U.S.C. § 1591."  *B.J.*, 2023 WL 6120682, at *7 (internal

16   quotations and citation omitted).  Once again, the court will analyze the participation and

17   knowledge requirements as one combined element due to the nature of the ventures that plaintiff

18   has alleged that the Franchisor defendants participated in.

19                      i.    The Wyndham Brand Defendants

20         The Wyndham brand defendants argue that plaintiff's SAC still lacks well-pled

21   allegations that they participated in a venture that they knew or should have known engaged in

22   sex trafficking.  (Doc. No. 70-1 at 11–22.)  In opposition, plaintiff argues that the allegations of

23   her SAC are sufficient, particularly because she now alleges details supporting the longstanding

24   relationship between her traffickers and the Sacramento Days Inn and that defendant Vitarag

25   reported her traffickers' activities to the Wyndham brand defendants prior to her trafficking.

26   (Doc. No. 75 at 12.)

27         Again, to successfully state a direct beneficiary liability against the Wyndham brand

28   defendants, plaintiff must allege facts supporting that the Wyndham brand defendants, "at the

12

1    very least, rented rooms to people they should have known were engaging in her sex trafficking."

2    *J.C.*, 2020 WL 6318707, at *4.  The court previously found that plaintiff had failed to meet this

3    pleading standard because her FAC alleged that she was trafficked at the Sacramento Days Inn

4    for a one-night stay or a two-day period, and even though she alleged that hotel staff reported her

5    signs of trafficking to the Wyndham brand defendants, she did not allege that the Wyndham

6    brand defendants continued transacting business with her traffickers after receiving this report

7    such that those defendants could be said to have had a tacit agreement with plaintiff's traffickers

8    to allow them to continue operating.  (Doc. No. 65 at 13.)

9          Upon amendment, plaintiff has added allegations clarifying that the Sacramento Days Inn

10   was one of her traffickers' preferred hotels that they repeatedly and regularly used for trafficking

11   multiple victims.  (Doc. No. 68 at ¶ 75.)  As stated above, according to plaintiff's allegations,

12   each time her traffickers and their victims checked into and stayed at the hotel, staff observed

13   behaviors and injuries consistent with sex trafficking.  (*Id*. at ¶¶ 75–80.)  Plaintiff further alleges

14   that the Wyndham brand defendants required hotel staff and defendant Vitarag to report suspected

15   criminal activity, including sex trafficking, to them.  (*Id*. at ¶ 87.)  She also alleges that based on

16   the obvious signs of her traffickers' illegal activity, defendant Vitarag did make a report to the

17   Wyndham brand defendants about the activities of plaintiff's traffickers prior to her trafficking at

18   the Sacramento Days Inn.  (*Id*. at ¶ 89.)  Additionally, she alleges that the Wyndham brand

19   defendants should have known about her traffickers' trafficking through their regular monitoring

20   of online reviews, their collection of customer surveys and complaints, their data collection about

21   guests including identification, payment information, and websites visited on Wi-Fi, their regular

22   inspections of the hotel, their employment of field agents to work with hotels on security issues,

23   their access to surveillance and security systems, their access to real-time data to monitor hotel

24   operations, and their requirement that defendant Vitarag submit regular detailed reports about

25   day-to-day hotel operations.  (*Id*. at ¶ 90.)

26         The Wyndham brand defendants argue that because plaintiff relies upon "information and

27   belief" to support some of these allegations, she cannot allege that the Wyndham brand

28   defendants had constructive knowledge that they were participating in a venture that trafficked

1    plaintiff or that they had a continuous business relationship with her traffickers.  (Doc. No. 70-1

2    at 14, 19.)  It is the case that plaintiff alleges that upon information and belief, multiple guests

3    noticed signs of trafficking activity and made complaints to the Wyndham brand defendants, and

4    defendant Vitarag reported numerous instances of suspected sex trafficking, including about the

5    activities of plaintiff's traffickers prior to her trafficking, to the Wyndham brand defendants.

6    (Doc. No. 68 at ¶ 89.)

7          However, the Ninth Circuit has held that the *Iqbal/Twombly* plausibility standard does not

8    prevent a plaintiff from pleading facts alleged upon information and belief.  *See Park v.*

9    *Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (citing *Arista Record LLC v. Doe*, 604 F.3d 110,

10   120 (2d Cir. 2010)).  An allegation made on information and belief is sufficient "where the facts

11   are peculiarly within the possession and control of the defendant or where the belief is based on

12   factual information that makes the inference of culpability plausible."  *Id.*  Further, facts about

13   "intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R.

14   Civ. P. 9(b).  Plaintiff's allegation that upon information and belief, defendant Vitarag reported

15   the activities of plaintiff's traffickers to the Wyndham brand defendants prior to her being

16   trafficked appears to be based on plaintiff's understanding of internal policies and procedures that

17   required defendant Vitarag and hotel staff to report observation of such activities.  (Doc. No. 68 at

18   87.)  The court finds that the facts underlying the Wyndham brand defendants' policies and

19   procedures and the state of mind of defendant Vitarag's staff who observed plaintiff's traffickers

20   are peculiarly within the control of those defendants.  *See S.C. v. Hilton Franchise Holding LLC*,

21   No. 2:23-cv-02037-APG-DJA, 2024 WL 4773981, at *3 (D. Nev. Nov. 12, 2024) ("Most of the

22   facts S.C. alleges on information and belief go to either internal training, policies, and procedures

23   of the hospitality defendants, which are peculiarly within those defendants' control, or involve

24   allegations about the state of mind of the employees who observed S.C. and her traffickers'

25   behavior at the Hampton Inn.  I therefore consider these allegations in determining whether S.C.

26   has plausibly stated her claims.").  Accordingly, the court will consider plaintiff's allegations

27   made on information and belief.  *See J.C.*, 2020 WL 6318707, at *6 (accepting the plaintiff's

28   allegations on information and belief, finding that the "human trafficking policies and trainings

14

1  implemented by each of the defendants . . . make it plausible that local hotel staff, pursuant to the

2  guidance provided in such policies and trainings, reported to [the franchisor defendant] incidents

3  involving [the plaintiff]").

4     The Wyndham brand defendants next argue that plaintiff's allegations provide an

5  insufficient basis upon which to assert a venture between them and plaintiff's traffickers because

6  she "does not allege that the Wyndham [brand] [d]efendants knew of or interacted with Plaintiff"

7  or that "hotel staff ever interacted with her or reported suspicions of her trafficking to the

8  Wyndham [brand] defendants."  (Doc. No. 70-1 at 13.)  In opposition, plaintiff argues that the

9  TVPRA statute "does not require knowledge of a particular sex-trafficking victim" but rather

10  venture-level knowledge, meaning that "a report about [plaintiff's] traffickers . . . is sufficient."

11  (Doc. No. 75 at 14.)

12     The TVPRA states that a "perpetrator" is one who "knowingly benefits . . . from

13  participation in a venture which that person knew or should have known has engaged in an act in

14  violation of this chapter."  18 U.S.C.A. § 1595(a).  The court finds that based on the language of

15  the statute, and in the absence of any authority cited by the Wyndham brand defendants indicating

16  otherwise, the knowledge requirement attaches to the venture, and not a particular victim.  *See*

17  *C.C. v. Wyndham Hotels & Resorts, Inc.*, No. 2:22-cv-03799, 2024 WL 1347303, at *8 (S.D.

18  Ohio Mar. 29, 2024) ("Defendant contends that it must have had knowledge or constructive

19  knowledge with respect to Plaintiff specifically. . . .  But the express terms of the statute impose

20  liability for benefiting from a venture that the Defendant knew or should have known was

21  engaged in violations of § 1591, not violations of § 1591 with respect to a particular person."),

22  *amended on reconsideration sub nom. In re Hotel TVPRA Litig.*, No. 2:21-cv-04933, 2024 WL

23  4945135 (S.D. Ohio Dec. 3, 2024).

24     Here, plaintiff alleges that a venture resulted when the Wyndham brand defendants and

25  defendant Vitarag continued renting hotel rooms to plaintiff's traffickers and created an

26  environment that facilitated their sex trafficking activities despite obvious signs of that activity.

27  (Doc. No. 68 at ¶ 197.)  As discussed above, plaintiff alleges that hotel employees witnessed

28  signs of her traffickers' activities, were required to report instances of suspected sex trafficking to

the Wyndham brand defendants, and did make a report to the Wyndham brand defendants about plaintiff's traffickers prior to her trafficking.  (*Id*. at ¶¶ 87–89.)  Plaintiff also alleges that the Wyndham brand defendants participated in the venture despite receiving that report, in that they "played a primary role in renting rooms at the Sacramento Days Inn."  (*Id*. at ¶ 100.)  Plaintiff alleges that the Wyndham brand defendants controlled and oversaw "all details of the guest reservation, check-in, and payment processes," required defendant Vitarag to use the Wyndham brand defendants' "centralized reservation system" and various software systems that they operated and controlled to book rooms, check guests into rooms, process payments, manage the property, and collect and manage data, and "exercis[ed] control over the price of rooms."  (*Id*. at ¶ 100.)  The court finds that these factual allegations support plaintiff's contention that the Wyndham brand defendants, by controlling bookings and payments, are the defendants that directly rented rooms to her traffickers.  *See J.M. v. Choice Hotels Int'l, Inc*., No. 2:22-cv-00672-KJM-JDP, 2023 WL 3456619, at *4 (E.D. Cal. May 15, 2023) (finding that the plaintiff had stated a direct beneficiary liability claim against the franchisor hotel, highlighting the plaintiff's allegation that the defendant, "in controlling the booking and payment processing, was the entity directly renting rooms to plaintiff's trafficker").

Given plaintiff's plausible allegation that the Wyndham brand defendants had been previously notified of her traffickers' trafficking activities, plaintiff has now sufficiently alleged a continuous business relationship between the traffickers and the Wyndham brand defendants such that it would appear that the traffickers and the Wyndham brand defendants had established a pattern of conduct or could be said to have had a tacit agreement.  *See B.J.*, 2023 WL 6120682 (finding the plaintiff's allegations sufficient to support a direct beneficiary claim against the franchisor hotel where her allegations "permit an inference that [] staff members had knowledge of her trafficking and would have reported it to [the franchisor defendant]").  The court will therefore deny the Wyndham brand defendants' motion to dismiss plaintiff's beneficiary liability claim brought against them.  *See S.C.*, 2024 WL 4773981, at *5 (rejecting the franchisor hotel's argument that the plaintiff failed to allege that it participated in a venture that engaged in trafficking, finding that the plaintiff's allegations that hotel employees concluded that she was

1   being trafficked, "were under a duty to inform [the franchisor defendant] of suspected trafficking,

2   and that the [] employees did inform [the franchisor defendant] of suspected trafficking" were

3   sufficient).

4                              ii.     Defendant Marriott

5                              (A)     Knowingly Benefit

6           Defendant Marriott argues that plaintiff has failed to allege the first element of a TVPRA

7   claim against it, namely, that defendant Marriott "knowingly benefitted" from the alleged sex

8   trafficking of plaintiff.  (Doc. No. 71 at 24.)  The court found in its prior order that "the rental of a

9   room . . . constitutes a financial benefit from a relationship with the trafficker sufficient to meet

10  this element" and concluded that plaintiff's allegations regarding defendant Marriott's receipt of

11  payment and profits from room rentals were sufficient to satisfy this element of her claim.  (Doc.

12  No. 65 at 13–14) (quoting *B.J.*, 2023 WL 3569979, at *4).  In its pending motion, defendant

13  Marriott renews its previous argument and urges the court to consider a recent decision from the

14  Northern District of Texas.  (Doc. No. 71 at 24, 32–33) (citing *Jane Doe (A.S.) v. Choice Hotels

15  Int'l, Inc.*, No. 6:23-cv-00033-C (N.D. Tex. June 10, 2024)).[7]

16          The court has reviewed the decision in *Jane Doe (A.S.)* and finds that it lends little support

17  to defendant Marriott's argument that the court should reconsider its finding that plaintiff has

18  properly alleged the 'knowingly benefit' element of her TVPRA claim.  The district court in *Jane*

19  *Doe (A.S.)* devoted only one paragraph to the sufficiency of plaintiff's allegations in support of

20  the TVPRA claim brought in that case, and stated in a footnote that the "plaintiff fails to allege

21  how [the d]efendant specifically knew or should have known that plaintiff was being trafficked

22  and thus knowingly benefitted."  (Doc. No. 71 at 33.)  This footnote is not supported by any

23  authority, and the conclusion that constructive knowledge of a plaintiff being trafficked is

24  required to 'knowingly benefit' under the TVPRA is a departure from the reasoning adopted by

25  the vast majority of district courts which have found allegations similar to plaintiff's to be

26  sufficient.  *See, e.g., M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 965 (S.D.

27  _____

28  [7]  Defendant Marriott notes that *Jane Doe (A.S.)* is not yet available on Westlaw or Lexis and has
    therefore attached a copy of the decision to its motion.  (Doc. No. 71 at 24, 32–33.)

                                        17

1   Ohio 2019) ("[T]he rental of a room constitutes a financial benefit from a relationship with the

2   trafficker sufficient to meet this element of the [section] 1595(a) standard."); *A.B.*, 455 F. Supp.

3   3d at 191 (same); *J.C.*, 2020 WL 6318707, at *4 (same); *S.Y. v. Naples Hotel Co.*, No. 2:20-cv-

4   00118-FTM-MRM, 2020 WL 4504976, at *3 (M.D. Fla. Aug. 5, 2020) (same); *J.B. v. G6 Hosp.,*

5   *LLC*, No. 19-cv-07848-HSG, 2021 WL 4079207, at *14 (N.D. Cal. Sept. 8, 2021) (same), *aff'd*

6   *sub nom. J.B. v. Craigslist, Inc.*, No. 22-15290, 2023 WL 3220913 (9th Cir. May 3, 2023)[8]; *Doe*

7   *(S.A.S.) v. ESA P Portfolio LLC*, No. 3:23-cv-06038-TMC, 2024 WL 3276417, at *9 (W.D.

8   Wash. July 2, 2024) (same).  Accordingly, the court finds once again that plaintiff has sufficiently

9   alleged facts supporting the first prong of her beneficiary liability claim against defendant

10  Marriott.

11              (B)      Participation in a Venture Which it Knew or Should Have

12                       Known Engaged in Sex Trafficking

13         Defendant Marriott also moves to dismiss plaintiff's direct liability claim against it,

14  arguing that plaintiff has still not pled that defendant Marriott participated in a venture that

15  violated the TVPRA.  (Doc. No. 71 at 13.)  In its prior order, the court found that plaintiff had not

16  properly alleged this element of her claim in the FAC because she "alleged only that her

17  trafficking at the Campbell Marriott took place over a 3-night or 4-day period."  (Doc. No. 65 at

18  15.)  The court found that without allegations that defendant Marriott learned of her trafficking

19  from hotel employees during that period or received notice about her traffickers and their

20  trafficking activities from a previous visit and nonetheless continued transacting business with her

21  traffickers, plaintiff had not sufficiently alleged that defendant Marriott participated in a venture

22  which it knew or should have known engaged in sex trafficking.  (*Id.*)  Defendant Marriott now

23  argues that plaintiff has added no new allegations in her SAC to cure this previously noted

24  deficiency, and that plaintiff's allegations are not sufficiently specific as to her own trafficking.

25  (Doc. No. 71 at 12–23.)  In opposition, plaintiff argues that she has sufficiently alleged a

26  continuous business relationship between defendant Marriott and her traffickers after defendant

27  _____

28  [8]  Citation to this and other unpublished Ninth Circuit opinions in this order is appropriate
    pursuant to Ninth Circuit Rule 36-3(b).

1    Marriott had knowledge that the relationship was facilitating trafficking, and that the TVPRA

2    requires only that a defendant have knowledge regarding the venture but not a specific victim.

3    (Doc. No. 76 at 11–18.)  In reply, defendant Marriott concedes that plaintiff has added new

4    allegations to her SAC but argues that they "are inherently contradictory and need not be accepted

5    as true."  (Doc. No. 80 at 10.)

6         Plaintiff now alleges in her SAC that she was trafficked at the Campbell Marriott "at least

7    five times" and "for several nights at a time."  (Doc. No. 68 at ¶ 135.)[9]  She also alleges that her

8    traffickers had particularly close relationships with certain members of the hotel staff at the

9    Campbell Marriott, including a maintenance employee who provided one of her traffickers with a

10   hotel master key to facilitate sex trafficking activities at the hotel and front desk staff members

11   who would have conversations with one of her traffickers in a "foreign language" and exchange

12   fist bumps.  (*Id.* at ¶ 135.)  She also alleges that based on the obvious signs of her traffickers'

13   trafficking, defendant Campbell HHG made a report to defendant Marriott about the activities of

14   plaintiff's traffickers prior to her being trafficked.  (*Id.* at ¶ 146.)  She further alleges that

15   defendant Marriot "played a primary role in renting rooms at the [Campbell Marriott]."  (*Id.* at

16   ¶ 160.)  Plaintiff alleges that defendant Marriott controlled and oversaw "all details of the guest

17   reservation, check-in, and payment processes," required defendant Campbell HHG to use

18   defendant Marriott's "centralized reservation system" and various software systems that it

19   operated and controlled to book rooms, check guests into rooms, process payments, manage the

20   property, and collect and manage data, and "control[ed] the price of rooms."  (*Id.*)

21        In the court's view, these allegations in plaintiff's SAC directly address and cure the

22   pleading defect that the court noted in its prior order regarding the FAC's lack of allegations that

23   defendant Marriott received notice about plaintiff's traffickers and their activities and yet

24   continued transacting business with them.  Plaintiff has now alleged that defendant Marriott was

25   notified about her traffickers' activities before she was trafficked, and yet defendant Marriott

26   _____

27   [9]  Plaintiff clarifies in her SAC that the September 2013 dates in which she alleges she was
     trafficked at the Campbell Marriott are the only dates she can specifically identify based on her
     memory and the documentation currently available to her, but they are not the only dates on
28   which she was trafficked at that hotel.  (Doc. No. 68 at ¶ 135.)

1    participated in the venture that ultimately trafficked her at the Campbell Marriott on at least five

2    occasions.  Accordingly, the court finds that plaintiff has now connected the dots so as to

3    plausibly allege a continuous business relationship between defendant Marriott and plaintiff's

4    traffickers.  *J.C.*, 2020 WL 6318707, at *2, 5, 6 (finding that the plaintiff's factual allegations

5    supporting the inference that "the local hotel[] knew or should have known [she] was a sex

6    trafficking victim" and "reported such activity directly to [the franchisor defendants]" plausibly

7    showed that the franchisor defendants "had actual and/or constructive knowledge of her

8    victimization" as opposed to "just sex trafficking problems in the hospitality industry in

9    general").

10        Further, the court is unpersuaded by defendant Marriott's argument that plaintiff's

11   allegations are contradictory and therefore should not be accepted as true.  Defendant Marriott

12   argues that plaintiff's allegation that a Campbell HHG staff member provided a master key to her

13   traffickers is inconsistent with her allegation that Campbell HHG would have reported

14   information about her trafficking to defendant Marriott.  (Doc. No. 80 at 10–11.)  The court

15   disagrees, seeing no inconsistency in plaintiff's allegations and finding it plausible that different

16   staff members at the Campbell Marriott took different actions with regard to the alleged

17   trafficking activities at the hotel.

18        The court is also unconvinced by defendant Marriott's argument that plaintiff fails to state

19   a claim because she does not allege that when hotel staff at the Campbell Marriott reported her

20   traffickers' activities to defendant Marriott, they specifically informed defendant Marriott about

21   her.  If this were the case, a defendant could evade liability under the TVPRA so long as a new

22   victim was trafficked on each occasion.  As noted above, the court does not find a victim-specific

23   rather than a venture-specific requirement in the text of the statute, which states that a perpetrator

24   is one who "participat[es] in a venture which that person knew or should have known has

25   engaged in an act in violation of this chapter."  18 U.S.C.A. § 1595.  The statute's plain language

26   provides that a perpetrator must at least have constructive knowledge that the venture they

27   participated in has engaged in sex trafficking.  Here, plaintiff's SAC satisfies this threshold by

28   alleging that defendant Marriott participated in a venture with plaintiff's traffickers by continuing

20

1  to transact business with them after receiving notice about their activities.  The court will

2  therefore deny defendant Marriott's motion to dismiss to the extent it is based on the contention

3  that plaintiff has not sufficiently alleged facts supporting its participation in a venture that it knew

4  or should have known engaged in sex trafficking.

5          2.        <u>Agency Beneficiary Liability Claims</u>

6          Plaintiff also pursues a vicarious liability theory against the Franchisor defendants for

7  violations by the Franchisee defendants as beneficiaries.  (Doc. No. 68 at ¶¶ 201–211.)  The

8  Franchisor defendants have also moved to dismiss this claim.

9          a.    *The Wyndham Brand Defendants*

10          The Wyndham brand defendants argue that the allegations of plaintiff's SAC do not

11  support a claim for vicarious liability because plaintiff has failed to state a viable claim against

12  defendant Vitarag and due to the fact that plaintiff's allegations supporting her agency and 'joint

13  employer' theories are insufficient.  (Doc. No. 70-1 at 22.)  As stated above, the court finds that

14  plaintiff has sufficiently stated a claim against defendant Vitarag for beneficiary liability.

15  Accordingly, the court turns solely to the question of whether plaintiff's SAC sufficiently alleges

16  an agency or joint employer relationship between defendant Vitarag and the Wyndham brand

17  defendants.

18          As to an agency relationship, the court noted in its prior order that under California law,

19  "a franchisee may be deemed to be the agent of the franchisor."  *Kuchta v. Allied Builders Corp*.,

20  21 Cal. App. 3d 541, 547 (1971).  "The general rule is that, if a franchise agreement gives the

21  franchisor the right of complete or substantial control over the franchisee, an agency relationship

22  exists."  *Walker v. Pac. Pride Servs., Inc*., 341 F. App'x 350, 351 (9th Cir. 2009) (citing *Kuchta*,

23  21 Cal. App. 3d at 547).  In the TVPRA context, "the franchisor-franchisee relationship is not a

24  principal-agent relationship unless the franchisor exercises control over the day-to-day operations

25  of the franchisee such that it controls the instrumentality that caused the plaintiff's harm."  *J.C.*,

26  2020 WL 6318707, at *8.

27          In her SAC, plaintiff alleges that the Wyndham brand defendants exercised "systemic and

28  pervasive control" over defendant Vitarag's "day-to-day operation of the Sacramento Days Inn"

by controlling the specified reservation and credit process systems, dictating policies regarding forms of payment, setting prices, requiring standardized training for hotel employees, imposing detailed recordkeeping and reporting requirements, establishing job descriptions, making or influencing employment decisions includes wages and salaries, controlling channels for guest feedback, employing field agents, and conducting frequent inspections.  (Doc. No. 68 at ¶ 126.)  Plaintiff also alleges that the Wyndham brand defendants assessed their properties to evaluate safety and security measures and controlled policies regarding identity verification and housekeeping services, restricted the ability of defendant Vitarag to refuse or cancel a reservation, controlled the price of rooms, and controlled all details of the customer loyalty program that the franchisee was required to implement.  (*Id*. at ¶¶ 99–100.)  Finally, plaintiff alleges that the Wyndham brand defendants exercised control by dictating required staffing levels, setting job qualifications, and making or influencing hiring decisions, among other methods.  (*Id*. at ¶ 128.)  The court concludes that these allegations provide a sufficient basis upon which to assert that a franchisor exercised substantial control for the purposes of an agency relationship.  *See B.M.*, 2020 WL 4368214, at *6 (finding that the plaintiff had sufficiently asserted an agency relationship where she alleged that the franchisor defendant set employee wages, made employee decisions, and standardized training methods for employees at the hotels); *J.C.*, 2020 WL 6318707, at *9 (finding that the plaintiff's allegation that "an agency relationship was created through Marriott's exercise of an ongoing and systematic right of control over its hotels, beyond that which is necessary to maintain brand standards, including hosting online bookings, setting employee wages, making employee decisions, and standardized training methods for employees" was "enough to get her past the pleadings stage").  Accordingly, the court rejects the Wyndham brand defendants' argument based upon the claimed insufficiency of plaintiff's allegations as to an agency relationship.

Plaintiff also contends that the Wyndham brand defendants are liable because they acted together with defendant Vitarag as the joint employers of the staff at the Sacramento Days Inn.  (Doc. No. 68 at ¶ 128.)  The TVPRA is silent on the issue of joint employment.  "[W]hen a statute is silent . . . the Ninth Circuit has analyzed the employment relationship under common

1    law agency principles." *A.B.*, 484 F. Supp. 3d at 942 (citing *U.S. Equal Emp. Opportunity*

2    *Comm'n v. Glob. Horizons, Inc.*, 915 F.3d 631, 641 (9th Cir. 2019)).  Under the common law

3    agency test, "the principal guidepost is the element of control—that is, the extent of control that

4    one may exercise over the details of the work of the other."  *U.S. Equal Emp. Opportunity*

5    *Comm'n*, 915 F.3d at 638 (internal quotation marks and citation omitted).  The court finds that

6    many of plaintiff's allegations supporting her agency theory support her joint employer theory as

7    well, particularly those allegations that the Wyndham brand defendants exercised control through

8    mandating training, setting employee wages, controlling and providing marketing systems and

9    services, making employee decisions, conducting inspections, and requiring hotel bookings

10   through a centralized reservation system.  *See A.B.*, 484 F. Supp. 3d at 942–43 (finding that the

11   plaintiff's allegations that the defendants were joint employers "with a high degree of interrelated,

12   intermingled, and unified operations" and that the franchisor defendants had "authority to

13   exercise control over conditions of employment such as training, setting employee wages,

14   advertising for employment, and making employment decisions" were sufficient to support the

15   allegation that the franchisor defendants "may be held liable as joint employers").  Accordingly,

16   the court will deny the Wyndham brand defendants' motion to dismiss plaintiff's indirect

17   beneficiary liability claim, finding that plaintiff has also sufficiently stated a joint employer

18   theory of liability.  *See S.C.*, 2024 WL 4773981, at *8 (finding that the plaintiff had sufficiently

19   alleged a joint employer theory where she alleged that the franchisor defendant provided

20   mandatory training, required franchisees to track and report criminal activity, and reserved the

21   right to approve or disapprove of the hotel's managers); *B.M.*, 2020 WL 4368214, at *6 (holding

22   that the plaintiff "state[d] a plausible claim for joint employment" where she alleged that the

23   franchisor defendants had control over the hotels by advertising for employment, making

24   employment decisions, setting employee wages, standardizing rules of operation, and

25   standardizing training methods for employees).

26            b.     *Defendant Marriott*

27       Defendant Marriott similarly argues that plaintiff's indirect beneficiary liability claim

28   brought against it must fail because plaintiff has not plausibly alleged beneficiary liability based

on either an agency theory or a joint employer theory.  (Doc. No. 71 at 26–33.)  In opposition, plaintiff argues that she sufficiently pleads a vicarious liability claim in her SAC against defendant Marriott based on the TVPRA violations of defendant Campbell HHG, who acted as defendant Marriott's actual agent when operating the Campbell Courtyard.  (Doc. No. 76 at 26.)  Plaintiff notes that this court already concluded in its prior order that this claim was not subject to dismissal, since her FAC plausibly stated a claim for direct liability against defendant Campbell HHG and an agency relationship between defendant Marriott and defendant Campbell HHG.  (*Id.*)  In reply, defendant Marriott argues that the allegations of plaintiff's SAC are too vague to support her agency theory and contends that plaintiff has merely added conclusory allegations regarding a "joint employer" theory raised for the first time in her SAC.  (Doc. No. 80 at 14.)

The court finds that, for the reasons stated in its prior order, the allegations of plaintiff's SAC are sufficient to state a claim for beneficiary liability against defendant Marriott pursuant to an agency theory.  (*See* Doc. No. 65 at 17–19) (denying defendant Marriott's previous motion to dismiss plaintiff's agency claim brought against it, finding that plaintiff had plausibly alleged an agency relationship and had stated a claim for direct liability against defendant Campbell HHG).  As to plaintiff's joint employer theory, plaintiff alleges in her SAC that defendant Marriott required defendant Campbell HHG and hotel management to participate in mandatory training programs and both dictated the content of that training and provided such training on-site and through a digital learning platform.  (Doc. No. 68 at ¶ 188.)  She also alleges that defendant Marriott set required staffing levels, set pay ranges for hotel staff, established detailed job descriptions for all positions, set requirements for the hiring process, oversaw employee discipline processes and termination decisions, and controlled all marketing for the hotel.  (*Id.* at ¶¶ 188, 190.)  Plaintiff further alleges that defendant Marriott retained control over the policies, procedures, and practices regarding the detection of and response to suspected sex trafficking at the Campbell Courtyard.  (*Id.* at ¶¶ 153.)  Based on these allegations, the court finds that plaintiff has sufficiently alleged that defendant Marriott may be held liable as a joint employer, and thus will deny its motion to dismiss plaintiff's indirect liability claim brought against it under the

/////

24

TVPRA.  *See A.B.*, 484 F. Supp. 3d at 942–43; *S.C.*, 2024 WL 4773981, at *8; *B.M.*, 2020 WL 4368214, at *6.

**B.     Perpetrator Liability Claims**

As noted previously, the TVPRA creates civil liability as to those who have knowingly benefitted from TVPRA ventures (beneficiary liability) and for those who have themselves committed a criminal offense under § 1591 of the TVPRA (perpetrator liability).  Section 1591 imposes criminal sanctions on "whoever knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . . knowing . . . that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act."  18 U.S.C. § 1591(a).  "Section 1591 imposes an actual knowledge requirement."  *J.M.*, 2023 WL 3456619, at *2 (citation omitted); *see also A.D., v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-cv-120, 2020 WL 8674205, at *2 n.1 (E.D. Va. July 22, 2020) (differentiating the "actual knowledge requirement" from the "constructive knowledge requirement" required for a beneficiary civil liability claim).

In this action plaintiff asserts a perpetrator liability claim against defendants Vitarag and Campbell HHG for "harbor[ing] individuals (including Jane Doe T.R.S.) at their hotels knowing or in reckless disregard of the fact that the victims would be caused, through force, coercion, or fraud, to engage in commercial sex acts while at their respective hotel properties."  (Doc. No. 68 at ¶ 194(b).)  She also asserts that the Franchisor defendants are vicariously liable for the actions of the Franchisee defendants as perpetrators.  (*Id*. at ¶¶ 201–211.)  The moving defendants each move to dismiss plaintiff's perpetrator liability claims brought against them.

1.      Defendant Vitarag and the Wyndham Brand Defendants

Defendant Vitarag moves to dismiss plaintiff's perpetrator liability claim against it, arguing that plaintiff has not alleged facts showing that defendant Vitarag "recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited plaintiff at all, let alone with actual knowledge that fraud or force would be used to cause her to engage in a commercial sex act."  (Doc. No. 72 at 10.)  In opposition, plaintiff argues that her allegations support an inference that defendant Vitarag violated the TVPRA through "harboring," and she

1   argues that the many obvious "red flags" associated with her traffickers' operation gave defendant

2   Vitarag actual or constructive knowledge that it was renting rooms for purposes of sex trafficking.

3   (Doc. No. 77 at 5, 12, 22.)

4        "[T]o state a § 1595(a) claim against a hotel under a perpetrator theory, a plaintiff must

5   allege facts plausibly establishing the defendant 'knowingly harbored or maintained a person with

6   knowledge that fraud or force would be used to cause her to engage in a commercial sex act.'"

7   *B.J.*, 2023 WL 6120682, at *11 (quoting *J.M.*, 2023 WL 3456619, at *2).  Because a plaintiff

8   must allege actual knowledge rather than constructive knowledge, district courts tend to look

9   beyond allegations of "red flag" signs that should have put a defendant on notice of sex

10   trafficking, and in particular focus on allegations regarding hotel staff actions or duration and age

11   that are suggestive of actual knowledge of sex trafficking.  *See B.J.*, 2023 WL 6120682, at *6

12   (finding that the plaintiff had stated a perpetrator liability claim against defendant Concord Inn,

13   but not as to any of the other defendant hotels, where she alleged that "her trafficker worked

14   directly with the manager of the Studio 6 Concord to sell [the plaintiff] for commercial sex");

15   *Doe (S.A.S.)*, 2024 WL 3276417, at *2 (finding that the plaintiff stated a claim for perpetrator

16   liability where she alleged that a manager from the hotel "was a customer himself, exchanging

17   free rooms for [the plaintiff's] services"); *J.M.*, 2023 WL 3456619, at *2 (finding that the plaintiff

18   plausibly pleaded the defendant's actual knowledge where she alleged that hotel staff rented her

19   trafficker rooms away from other guests and "[i]nstructed 'johns' to 'hurry up' as they entered

20   and left her room," among other allegations that hotel staff witnessed and overheard physical

21   abuse); *S.C.*, 2024 WL 4773981, at *6 (finding that the plaintiff plausibly pleaded actual

22   knowledge where she alleged that she visited the same hotel three times per week for a year,

23   looked visibly younger than eighteen and met with "older men . . . approximately 50 years old,"

24   and the activity bore other indicia of sex trafficking).

25        Here, plaintiff has not alleged that staff at the Sacramento Days Inn took actions

26   suggestive of actual knowledge of her traffickers' sex trafficking, such as a manager working

27   directly with her traffickers or becoming a "customer."  She has also not alleged specific details

28   regarding her age or the duration and frequency of her traffickers' activity to support a claim that

26

1    defendant Vitarag actually knew, rather than should have known, that it was participating in a sex

2    trafficking venture.  As noted above, the court found plaintiff's allegations that her traffickers

3    "frequent[ly]" used the Sacramento Days Inn, that she was trafficked there at least twice, that

4    hotel staff had interactions at check-in with her traffickers and their victims that were consistent

5    with trafficking, that her traffickers did not provide identification, that she had visible injuries,

6    that front desk staff permitted payments by cash and prepaid card, and that hotel staff provided

7    extra housekeeping, among other allegations, were sufficient to allege that defendant Vitarag

8    should have known that they were participating in a venture that was engaged in sex trafficking

9    when they rented rooms to her traffickers.  While the court concluded that these indicators, and in

10   particular the allegations that hotel staff observed victims' behavior and injuries at check-in, were

11   sufficient to plausibly state constructive knowledge, the court does not find that these same

12   allegations support a conclusion that defendant Vitarag had actual knowledge of the alleged sex

13   trafficking activity.  *See Doe (G.N.C.)*, 2024 WL 4149251, at *3 (holding that the plaintiff's

14   allegations that she stayed at the subject hotel for "extended periods" within a three-month

15   window, that her "trafficker was often present with [her] at check in and would linger around the

16   hotel or in the parking lot while she was with a john," that the "hotel room was paid for with a

17   prepaid card," that her trafficker "limited her ability to communicate with hotel staff, such that it

18   was obvious and apparent she was being subjected to coercion and control," that "[h]ousekeeping

19   staff were prevented from entering the room for regular cleaning," that there was "heavy foot

20   traffic" in and out of her room, and that she would "enter[] the hotel lobby in lingerie" were

21   sufficient to allege the hotel defendant's constructive knowledge but not actual knowledge of

22   trafficking).  Accordingly, the court will grant defendant Vitarag's motion to dismiss plaintiff's

23   perpetrator liability claim against it, finding that the actual knowledge requirement has not been

24   sufficiently alleged.  Having found this claim subject to dismissal, the court will also dismiss

25   plaintiff's vicarious perpetrator liability claim brought against defendant Vitarag's associated

26   franchisors, the Wyndham brand defendants.

27          The court also concludes that the granting of further leave to amend with respect to this

28   claim would be futile, as plaintiff has already amended her complaint twice, including following

27

1    this court's prior order which both found and explained that plaintiff had not sufficiently alleged

2    defendant Vitarag's actual knowledge. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting

3    that "repeated failure to cure deficiencies by amendments previously allowed" can justify denial

4    of further leave to amend); *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013)

5    ("Here, the district court denied leave to amend because 'Plaintiffs have had ample opportunity to

6    properly plead a case and have failed to do so.' . . . The district court did not abuse its discretion

7    by denying leave to amend."). Further, plaintiff does not seek leave to amend this claim in her

8    opposition nor does she proffer the existence of any unalleged facts that could cure the noted

9    deficiencies of the claim. Accordingly, plaintiff's perpetrator liability claim against defendant

10   Vitarag and the Wyndham brand defendants will be dismissed without further leave to amend.

11              2.   Defendant Marriott

12   Defendant Marriott also moves to dismiss plaintiff's perpetrator liability claim as imputed

13   to it through plaintiff's vicarious liability theory. (Doc. No. 71 at 25–26.) Defendant Marriott

14   argues that its associated franchisee, defendant Campbell HHG, did not have actual knowledge of

15   plaintiff's trafficking, and did not harbor or maintain plaintiff for the purpose of compelling her to

16   engage in commercial sex. (*Id.*) In opposition, plaintiff does not specifically respond to these

17   contentions but appears to argue that her allegations support actual or constructive knowledge,

18   which can be imputed to defendant Marriott from defendant Campbell HHG and the staff at the

19   Campbell Courtyard. (Doc. No. 76 at 18.)

20   The court first considers the actual knowledge requirement and finds that unlike plaintiff's

21   allegations regarding her time at the Sacramento Days Inn, plaintiff's allegations regarding the

22   Campbell Marriott do sufficiently support the claim that defendant Campbell HHG had actual

23   knowledge of plaintiff's trafficking. Defendant Marriott argues that plaintiff is asking this court

24   to "wrongly infer that the Campbell HHG had actual knowledge of her trafficking because front

25   desk staff and [p]laintiff's trafficker allegedly spoke to each other in a foreign language at some

26   point over a three-day period back in 2013." (Doc. No. 71 at 25.) Defendant Marriott ignores,

27   however, plaintiff's allegation that a staff member at the Campbell Marriott provided one of

28   plaintiff's traffickers with a hotel master key in order to facilitate the trafficking activities, and

1    that this same trafficker exchanged fist bumps with hotel staff.  The court finds that these

2    allegations, together with plaintiff's allegations that she arrived at the Campbell Marriott with

3    visible injuries consistent with having been beaten and of other obvious signs of her traffickers'

4    activity, are a sufficient basis upon which to find that plaintiff has alleged defendant Campbell

5    HHG's actual knowledge.  *See B.J.*, 2023 WL 6120682, at *8 (wherein the court noted the

6    plaintiff's allegations that hotel staff supervised "the children of plaintiff and other trafficking

7    victims while their mothers were being sold for sex within the [] hotel rooms" and of visible signs

8    of abuse in holding that the plaintiff had stated a cognizable perpetrator liability claim).

9          Defendant Marriott next argues that in order to allege that defendant Campbell HHG

10   harbored or maintained plaintiff as required for a perpetrator liability claim, plaintiff needed to

11   allege that defendant Campbell HHG did so with "an intent to commit the crime or further the

12   criminal enterprise."  (Doc. No. 71 at 26.)  Defendant Marriott relies on two out of circuit

13   decisions, but neither directly support this proposition.  (*Id.*) (citing *Ricchio v. McLean*, 853 F.3d

14   553 (1st Cir. 2017) (reversing the district court's dismissal of the plaintiff's claims against a hotel

15   owner and operators, finding several allegations, including that her traffickers and a hotel

16   operator expressed their intent to continue their commercial dealings regarding her, supported the

17   plaintiff's TVPRA claims); *Mouloki v. Epee*, 262 F. Supp. 3d 684, 698 (N.D. Ill. 2017) (noting

18   that the "TVPRA does not define what it means to 'harbor'" but observing that the plaintiff in

19   *Ricchio* had "sufficiently pled a claim against a hotel operator for knowingly providing lodging to

20   someone for obtaining sexual labor or services")).  Indeed, the text of the TVPRA contains no

21   such intent requirement in order to find that a violator has harbored a victim, and the court has

22   identified authority suggesting that hotels can "harbor" under the TVPRA through the act of

23   renting rooms to a trafficker.  *See S.C.*, 2024 WL 4773981, at *6 ("Although Hilton argues in its

24   reply that a hotel does not 'harbor' its guests . . . courts have concluded that a hotel can harbor

25   under the TVPRA by renting rooms to a trafficker."); *Doe (G.N.C.)*, 2024 WL 4149251, at *2

26   ("Harboring is a term not defined in the statute but could include the concept of giving 'shelter or

27   refuge.'"); *Doe (S.A.S.)*, 2024 WL 3276417, at *8 ("Moreover, construing the complaint in

28   S.A.S.'s favor, the control that S.A.S.'s traffickers allegedly showed over her while at the

1   hotel . . . further supports that hotel staff were on reasonable notice that S.A.S. was being

2   'harbored' or 'maintained' in the rooms she was staying and was being 'coerced' into commercial

3   sex.").  Accordingly, the court is unpersuaded by defendant Marriott's argument that plaintiff's

4   SAC fails to sufficiently allege that she was 'harbored' and will deny its motion to dismiss

5   perpetrator liability claim as imputed to it through vicarious liability.

6   **C.      Shotgun Pleading**

7         Finally, defendant Vitarag requests that this court order plaintiff to provide a more definite

8   statement.  (Doc. No. 72 at 15.)

9         Rule 12(e) states that a party may move for a more definite statement if the pleading is "so

10   vague and ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).

11   The moving party "must point out the defects complained of and the details desired."  *Id.*  Such

12   motions are "not favored by the courts since pleadings in federal courts are only required to fairly

13   notify the opposing party of the nature of the claim."  *Griffin v. Cedar Fair, L.P.*, 817 F. Supp. 2d

14   1152, 1154 (N.D. Cal. 2011) (quoting *Resolution Tr. Corp. v. Dean*, 854 F. Supp. 626, 629 (D.

15   Ariz. 1994)).  Therefore, motions for a more definite statement "should not be granted unless the

16   defendant cannot frame a responsive pleading."  *Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525

17   F. Supp. 940, 949 (E.D. Cal. 1981).

18         Defendant Vitarag seeks a more definite statement particularly regarding how defendant

19   Vitarag "specifically knowingly benefitted financially from participation in a venture which it

20   knew or should have known had engaged in an act of sex trafficking as to Plaintiff."  (Doc. No.

21   72 at 15.)  However, the court has already reviewed many of plaintiff's allegations regarding her

22   time at the Sacramento Days Inn in reaching the conclusion that plaintiff's SAC sufficiently states

23   a beneficiary liability claim against defendant Vitarag.  While the court noted in its prior order

24   that the FAC was "not a model of clarity," it finds that plaintiff's SAC has clarified the

25   inconsistencies that the court identified throughout the FAC, and plaintiff's SAC no longer

26   groups the majority of her allegations as having occurred at both Subject Hotels or as supporting

27   claims against all defendants or all Franchisor or Franchisee defendants.  Accordingly, the court

28   finds that defendant Vitarag has received sufficient notice as to the nature of the claims brought

30

against it and will deny its request for a more definite statement. *See Xie v. De Young Props.*
*5418, L.P.*, No. 1:16-cv-01518-DAD-SKO, 2017 WL 1349013, at *5 (E.D. Cal. Apr. 6, 2017)
(denying the defendant's motion for a more definite statement where "the complaint is specific
enough to notify defendant of the claim being asserted"); *cf Flores v. City of California City*, No.
1:18-cv-00703-DAD-JLT, 2019 WL 1934016, at *5–6 (E.D. Cal. May 1, 2019) (granting the
defendants' motion for a more definite statement where "the SAC fails to state who [the second
and third] causes of actions are asserted against with sufficient specificity").

**CONCLUSION**

For the reasons explained above,

1. The Wyndham brand defendants' motion to dismiss (Doc. No. 70) is granted in
part and denied in part, as follows:

    a. The Wyndham brand defendants' motion to dismiss plaintiff's beneficiary
liability claims brought against it is denied;

    b. The Wyndham brand defendants' motion to dismiss plaintiff's perpetrator
liability claim brought against it is granted, without further leave to amend;

2. Defendant Marriott's motion to dismiss (Doc. No. 71) is denied in its entirety;

3. Defendant Vitarag's motion to dismiss (Doc. No. 72) is granted in part and denied
in part, as follows:

    a. Defendant Vitarag's motion to dismiss plaintiff's beneficiary liability
claims brought against it is denied;

    b. Defendant Vitarag's motion to dismiss plaintiff's perpetrator liability claim
brought against it is granted, without further leave to amend;

4. Within seven (7) days of the entry of this order plaintiff is ordered to show cause
why this action should not be dismissed as to defendant SKAVP;

5. Within twenty-one (21) days from the date of entry of this order, the moving
defendants shall file responsive pleadings to plaintiff's SAC; and

/////

/////

31

6.   In accordance with the parties' prior stipulations (Doc. Nos. 49, 66) and the court's prior orders (Doc. Nos. 50, 67), the parties shall file a joint status report regarding the pretrial scheduling of this case no later than fourteen (14) days after the issuance of this order.

IT IS SO ORDERED.

Dated:   **January 6, 2025**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

32